[Civ. No. 8529. First Appellate District, Division One.—September 26, 1932.]

JOHN C. YOUNG, as Executor, etc., Appellant, v. EMILY B. YOUNG et al., Respondents.

JOHN C. YOUNG, as Executor, etc., Appellant, v. JOHN G. SHANNONHOUSE, Respondent.

Lawrence W. Young, Donald C. Young and Trefts & Young for Appellant.

George W. Lupton, Jr., and Randolph V. Whiting for Respondents.

THOMPSON (GEORGE H.), J., *pro tem.*—In these actions the plaintiff, as the executor of the last will of said William D. Young, deceased, sought to enforce a trust on

certain personal property consisting of stocks and bonds alleged by the plaintiff to have been fraudulently and wrongfully taken by the said defendants, thereby depriving the estate of the said personal property. The defendants answered denying these allegations and alleging that Emily B. Young, the surviving wife of the decedent and one of the defendants herein, became the owner and legal possessor of these stocks and bonds and that in regard to them she had done nothing wrongfully or fraudulently. The two actions were consolidated for trial by order of the trial court, and were tried together; and the trial court, finding in favor of the defendants, entered judgments accordingly. A new trial was denied by the court in each case. The plaintiff has appealed from each judgment, and by stipulation of the parties the two appeals have been consolidated and have been heard as one.

William D. Young died on November 14, 1928, at the age of sixty-nine years. For two days prior to his death he had been in a state of coma, and for some months prior to his death his health had been failing and during that time he had exhibited manifestations of being afflicted with Parkinson's disease, a disease otherwise known as paralysis agitans. On September 12, 1928, he made the will that was admitted to probate, of which the plaintiff John C. Young is the executor.

William D. Young and the defendant Emily B. Young, had been married for some thirty-one years, and it would appear that their married life was a happy and harmonious one and that each entertained the greatest regard and respect for the other, and trusted the other at all times implicitly in all matters. All the property owned and possessed by them at the time of the death of the decedent was acquired by them subsequent to their marriage and was the acquisition of the marital union. It appears that by different agreements entered into by them, they sought to cast or transmute certain of their acquired property into a joint interest, in order to avail themselves of the advantages incident to such estate, as has been done quite commonly in California during recent years, illustrations of which appear in the following cases: *Estate of Harris,* 169 Cal. 725 [147 Pac. 967]; *Kennedy* v. *McMurray,* 169 Cal. 287 [146 Pac. 647, Ann. Cas. 1916D, 515]; *Booth* v. *Oakland Bank of Sav-*

*ings,* 122 Cal. 19 [54 Pac. 370]; *McCarthy* v. *Holland,* 30
Cal. App. 495 [158 Pac. 1045]; *Kelly* v. *Woolsey,* 177 Cal.
325 [170 Pac. 837]; *Williams* v. *Savings Bank of Santa
Rosa,* 33 Cal. App. 655 [166 Pac. 366]; *Halsted* v. *Central
Savings Bank,* 36 Cal. App. 500 [172 Pac. 613]; *Halsted* v.
*Oakland Bank of Savings,* 36 Cal. App. 816 [172 Pac. 614];
*Conneally* v. *San Francisco S. & L. Soc.,* 70 Cal. App. 180
[232 Pac. 755]; *Hill* v. *Badeljy,* 107 Cal. App. 598 [290
Pac. 637]; *Estate of Gurnsey,* 177 Cal. 211 [170 Pac. 402];
*McDougald* v. *Boyd,* 172 Cal. 753 [159 Pac. 168]; *Estate of
Nelson,* 104 Cal. App. 613 [286 Pac. 439]; *Salles* v. *Loane,*
204 Cal. 55 [266 Pac. 538].

As to the personal property in controversy—the stocks
and bonds, the ownership and possession of which the sur-
viving wife claims she acquired pursuant to and as the
legal result of an agreement entered into by her with her
said husband and by and with his consent—the question
arising now herein is: Are the findings and the judgments
of the court that Emily B. Young became such owner sus-
tained by the record? As the facts will have to be weighed
and considered in the light of the law of California in effect
during the period of time involved, a reference will be made
to certain of the sections of the Civil Code deemed ap-
plicable:

"The ownership of property by several persons is either:
1. Of joint interests; 2. Of partnership interests; 3. Of in-
terests in common; 4. Of community interest of husband
and wife." (Sec. 682.)

"A joint interest is one owned by several persons in
equal shares, by a title created by a single will or transfer,
when expressly declared in the will or transfer to be a joint
tenancy, or when granted or devised to executors or trustees
as joint tenants." (Sec. 683.)

"An interest in common is one owned by several persons,
not in joint ownership or partnership." (Sec. 685.)

"Every interest created in favor of several persons in
their own right is an interest in common, unless acquired
by them in partnership, for partnership purposes, or unless
declared in its creation to be a joint interest, as provided
in section six hundred and eighty-three, or unless acquired
as community property." (Sec. 686.)

"Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either." (Sec. 687.)

"Transfer is an act of the parties . . . by which the title to property is conveyed from one living person to another." (Sec. 1039.)

"A voluntary transfer is an executed contract, subject to all rules of law concerning contract in general, except that a consideration is not necessary to its validity." (Sec. 1040.)

"A transfer may be made without writing, in every case in which a writing is not expressly required by statute." (Sec. 1052.)

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying the confidential relations with each other, as defined by the title on trusts." (Sec. 158.)

"A husband and wife may hold property as joint tenants, tenants in common, or as community property." (Sec. 161.)

The foregoing sections of the Civil Code were in effect during the time of the acquisition of the property in controversy and during the time of all dealings had by William D. Young and his wife concerning such property. ■ It is quite clear under the law that any property acquired as the separate property of either (sec. 687, Civ. Code), or any property made separate property (joint) by a transmutation effected by the husband and wife during the married relation, would not constitute or be community property of the parties at the time of the death of the decedent, for a community estate and a joint tenancy cannot exist at the same time in the same property. (*Siberell* v. *Siberell*, 214 Cal. 767 [7 Pac. (2d) 1003, 1005].)

■ As mentioned heretofore, the property concerning which there is controversy herein is personal property—stocks and bonds. As between the husband and wife the property interest therein was subject to oral contract; a transfer could likewise be made without writing. ■ That a husband and wife, at least as between themselves, may enter into a binding agreement that any certain property

shall not thereafter be held as community property but instead as a joint tenancy, with all the characteristics of such an estate, has long been recognized in California, and as the law (sec. 1052, Civ. Code) does not require the execution of a writing to effect a transfer of personal property, it follows that a joint tenancy in personal property may be created by an oral agreement by which the title to the property is transferred to two persons as joint tenants. (*Estate of Harris, supra; Kennedy* v. *McMurray, supra.*) Even to establish a joint tenancy account in a bank under the Bank Act, a formal written agreement between the depositors is not necessary. Section 15a of the Bank Act does not require it (*Hill* v. *Badeljy, supra,* at p. 605), and prior to the enactment of said section 15a, the language of the Bank Act, then section 16, which in this regard was substantially the same as appears in section 15a, did not require it. When a husband and wife by agreement declare that a certain fund or certain money shall thereafter be held by them as a joint tenancy, the effect of such an agreement is, as between them, to create a joint interest or estate in the property to which it relates, and thereafter such property ceases to be community property. (*Estate of Gurnsey, supra; In re Finley,* 103 Cal. 694 [284 Pac. 941].) The Civil Code lays down a definition for "joint interest"; and at one time regardless of the asserted technical essentials of joint tenancy under the common law, designated as a joint tenancy, the relation between the spouses created by a declared homestead (*Schuler* v. *Savings & L. Soc.,* 64 Cal. 397 [1 Pac. 479]) ; the right of survivorship being attached to such relation. Under sections 158 and 159 of the Civil Code, it is now well settled that husband and wife may, as between themselves, enter into any contract respecting property which either might if unmarried. Under this plenary authority, the separate property of each may be converted into community property, and the community property of both may likewise be converted into separate property of both or either. (*Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 712, 719, 720 [103 Pac. 190], and cases cited; *Siberell* v. *Siberell, supra,* at p. 1004.)

The personal property concerning which the plaintiff seeks to enforce a trust comprises: 1. A certificate for 100 shares of Union Oil Associates; 2. The contents of the safe deposit

box. The certificate for the 100 shares of Union Oil Associates was at The Crocker National Bank of San Francisco, and the safe deposit box was at The French American Bank in San Francisco. Between November 10, 1928, and the date of her husband's death, November 14, 1928, Mrs. Young took over the foregoing, claiming that she did so with the consent of her husband expressly given by him prior to his decease. As to the certificate for 100 shares of Union Oil Associates at The Crocker National Bank, it appears that in January, 1913, at a time when provisions (section 16) substantially the same as section 15a of the Bank Act made such a deposit the property of the depositors as joint tenants, Mr. and Mrs. Young opened an account with The Crocker National Bank under an agreement, signed by them both, concerning such "Deposit Account" reading as follows: "All moneys now or at any time deposited by us, or either of us, or by any person whomsoever with The Crocker National Bank of San Francisco to the credit of the above account, are and shall be so deposited by us and received by it upon the following terms and conditions of repayment, namely; that the amount thereof shall be paid by The Crocker National Bank of San Francisco to us, or either of us, or to the survivor of us, or to the executors, administrators or assigns, of such survivor, subject to the statute relating to inheritance and succession taxes and all the rules and regulations made pursuant thereto; or upon the written order of any such person so entitled to payment; and without reference to the original ownership of the moneys deposited."

It appears under the evidence that William D. Young in June, 1926—in this transaction as the representative of and the agent of the joint tenancy (*Simpson* v. *Bergmann, etc. et al.,* 125 Cal. App. 1 [13 Pac. (2d) 531]), for it does not appear otherwise—purchased from this joint account the 100 shares of Union Oil Associates later evidenced by this certificate; that the certificate though issued to William D. Young was by him indorsed in blank "William D. Young" and left at the bank, no other disposition thereof having been made by him. This certificate was later, in November, 1928, turned over to Mrs. Young by the bank at her request. Under the situation so appearing, embracing as it does the fact that the certificate for the 100 purchased

shares was indorsed in blank by Mr. Young, when the presumption is applied that what was done was done in good faith and for the joint tenancy and not in violation of the rights of the parties under their joint tenancy agreement, as we think it must, we can see no basis for holding that a transmutation to community property was accomplished thereby or that there was any intention to accomplish such transmutation. Under the circumstances here presented, the taking of or the issuing of the certificate in the name of William D. Young was but a step necessary to the purchase under the circumstances and is not entitled to be regarded as otherwise. We do not think that the finding and judgment of the trial court is against the record in this particular.

■ As to the contents of the safe deposit box, it appears that in May, 1916, Mr. and Mrs. Young rented a safe deposit box at The French American Bank in San Francisco. In a writing then executed by them, there is set forth among other things the following declaration of the parties: ''We hereby declare that all the contents of said safe now or hereafter placed therein, are our joint property and that the title and right of ownership thereto and to the whole thereof rests in the survivor of us as his or her separate property.'' Such was the agreement of the parties. As between themselves they had the right to make this agreement. It must therefore be considered a binding agreement as between them. It is not necessary to travel outside of the facts of this case, for we have here to deal with only the situation of fact that is presented. Restricted to the facts of this case, it cannot be said that there was any uncertainty involved in the undertaking and agreement of the parties or that the said agreement worked harm to either in any way. They each knew what they were doing and what they wished to accomplish. There is no claim that the personal property was placed in the safe deposit box by any outside party or that outside parties had tampered with this personal property or had had anything to do with the placing of it in this safe deposit box. Admittedly it was placed there by Mr. Young and at a time when there could be no question concerning his ability to realize what he was doing; he was then fully himself and was aware of just what such act meant under the terms of

the agreement just mentioned, and without question he attached to his act the meaning and effect the two parties had contemplated. In the situation presented, we do not perceive anything in the record or in the law applicable thereto that should be held to destroy the effect of this agreement and to nullify what was evidently done in pursuance of and in reliance on its terms.

██ Under this view, the fact that William D. Young held for John G. Shannonhouse twenty-two of the seventy-two shares, The Texas Corporation, evidenced by the certificate does not help plaintiff, for plaintiff is in no way concerned with any property other than community property. Moreover, the defendant Emily B. Young has not contested the claim of Shannonhouse, but has admitted Shannonhouse's ownership.

The record and the contentions of appellant in connection therewith have been carefully read and considered, but we find no sufficient reason for disturbing the judgments of the trial court. The judgments are affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.