[Civ. No. 1956.   Fourth Appellate District.—April 21, 1936.]

MARY ALICE LAGAR, Appellant, v. CHARLES E. ERICKSON, as Administrator, etc., Respondent.

Hillyer & Boldman for Appellant.

George H. Stone for Respondent.

BARNARD, P. J.—The plaintiff brought this action to recover certain Home Owners' Loan Corporation bonds of the face value of $1100, claiming the same as surviving joint tenant.

The case was tried upon an agreed statement from which the following facts appear: Mrs. Addie M. Erickson owned a note and mortgage, the title to which she caused to be transferred to herself and the plaintiff as joint tenants on May 7, 1931. She had theretofore caused a bank account to be opened as a joint account between herself and the plaintiff, with the right of survivorship. All funds placed in this account and all withdrawals therefrom were made by Mrs. Erickson. On August 1, 1934, she and the plaintiff received and receipted for $1975 of Home Owners' Loan Corporation bonds in satisfaction of said note and mortgage. On the same day Mrs. Erickson sold to plaintiff and her husband five of these bonds for $500, $400 of which she deposited in the joint account referred to. At the same time she gave Mrs. Lagar a $100 bond as a birthday present. Mrs. Lagar placed the six bonds in her own safety deposit box, and Mrs. Erickson placed the remaining bonds in a safety deposit box which she rented that day in her own name, naming Mrs. Lagar as her "deputy". Both were present when this box was rented and both signed the card, the cost of the box being paid by Mrs. Erickson. When the card was signed the bank attendant

asked to whom she wished the contents delivered in case of her death, to which she replied that she did not know, but would let them know later, which was never done. On August 21, 1934, Mrs. Erickson took out and sold two of the bonds, placing the proceeds in the joint account. She died about two months later, at which time there was $589.39 in the joint account, which was turned over to the plaintiff as survivor. In her will, dated July 24, 1933, Mrs. Erickson referred to the mortgage held by her and Mrs. Lagar jointly and stated that she would like to have $900 of its proceeds given to certain people in a certain way, that if any of them had passed or could not be found the money was to revert to Mrs. Lagar, that Mrs. Lagar was to use her own judgment in all cases, and that she desired none of it to go to "the Erickson clan".

In addition to the stipulated facts "and as inference drawn by the court from those facts, and as additional findings", the court found as follows:

"That the $1975.00 of Home Owners' Loan Corporation bonds delivered to plaintiff and defendant's testatrix were, on the day of such delivery and immediately thereafter, divided by said two parties, part to one and part to the other.

"II

"That said parties by said partition intended that the joint tenancy character of said bonds be terminated."

As a conclusion of law the court found that the bonds found in the testatrix's safety deposit box after her death were her sole property and now are the property of the defendant. From the judgment entered the plaintiff has appealed.

It is first contended that the additional findings or inferences drawn by the court, above referred to, went beyond the stipulated facts and therefore must be disregarded as surplusage. The stipulated facts contained merely evidentiary matter, leaving ultimate facts or inferences to be found or drawn by the court in order to settle the issues presented and, under such circumstances, further findings were proper. (*Chrisman* v. *Lanterman,* 149 Cal. 647 [87 Pac. 89, 117 Am. St. Rep. 167] ; *Towle* v. *Sweeney,* 2 Cal. App. 29 [83 Pac. 74] ; *Zimmerman* v. *Continental Life Ins. Co.,* 99 Cal. App. 723 [279 Pac. 464] ; *Richert* v. *City of San Diego,* 109 Cal. App. 548 [293 Pac. 673].)

The main question presented is whether the evidence is sufficient to support the finding or conclusion that the joint

tenancy character of these bonds had been terminated by the agreement of the parties. It is well settled that property acquired through other property held in joint tenancy retains the same character in the absence of any agreement to terminate the joint tenancy. (*Estate of Harris*, 169 Cal. 725 [147 Pac. 967]; *Estate of McCoin*, 9 Cal. App. (2d) 480 [50 Pac. (2d) 114].) In so far as personal property is concerned, joint property can be changed to separate by an oral agreement to that effect. (*Young* v. *Young*, 126 Cal. App. 306 [14 Pac. (2d) 580].) In *Estate of Putnam*, 219 Cal. 608 [28 Pac. (2d) 27], the court said:

''A suggestion is advanced that perhaps the joint tenancy was not in fact terminated,—that perhaps there was no contract or understanding between the parties to that effect. The findings of the court upon this question constitute a sufficient answer thereto. The court found that the joint tenancy was terminated and every intendment must be indulged to support it.''

While the act of one joint tenant without the express or implied authority or consent of his cotenant cannot prejudicially affect the rights of the latter (*Swartzbaugh* v. *Sampson*, 11 Cal. App. (2d) 451 [54 Pac. (2d) 73]), such an act, when done with the consent of the cotenant and under circumstances showing an implied authority so to act, may be sufficient to terminate a joint tenancy. Whether or not there was an intention to terminate the joint tenancy must depend upon the circumstances in a particular case, and where inferences may be drawn either way the question is one of fact for the trial court.

The deceased was an elderly woman who apparently needed all of her income for her support and the arrangement between her and the appellant was doubtless made for the purpose of leaving to the appellant any part of this property which remained at her death. In her will, made the year before she died, she expressed the wish that $900 should go to certain other people. When she first wanted to give the appellant a birthday present the appellant told her she did not want any of her money. When the bonds were taken in exchange for the mortgage she exercised acts of ownership over them with the appellant's knowledge and with her implied consent. She gave one of the bonds to the appellant as a birthday present, and sold five others to her for $500.

If the appellant regarded herself as the owner of a half interest in all of the bonds the natural thing would have been to pay Mrs. Erickson for the other half only. The appellant then placed six of the bonds in her private lock-box and the deceased placed the others in her own box which she then rented, telling the bank officials that she would later give them directions as to what to do with them in the event of her death. All this was done in the presence of the appellant, with her knowledge and implied consent. Still later Mrs. Erickson sold two of the bonds. The actions of both parties in connection with these bonds were inconsistent·with the joint tenancy which had existed, and the evidence sustains the inference drawn by the trial court, even though a contrary inference might have been drawn. The question was one of fact and every intendment must be indulged in favor of the findings made.

The judgment is affirmed.

Jennings, J., concurred.

MARKS, J., Concurring.—I consider it necessary to briefly explain my concurrence in view of the recent case of *Swartz-baugh* v. *Sampson*, 11 Cal. App. (2d) 451 [54 Pac. (2d) 73], where this court said: "An estate in joint tenancy can be severed by destroying one or more of the necessary unities, either by operation of law, by death, by voluntary or certain involuntary acts of the joint tenants, or by certain acts or omissions of one joint tenant without the consent of the other." I believe this correctly states the rule applied at common law and prevailing in the great majority of the states which follow that law. It is evident that if the rule be strictly applied the conclusion follows that where personal propery is purchased with joint tenancy funds and title is placed in the name of one of the cotenants the joint tenancy estate is terminated by the destruction of one of its necessary unities (*Siberell* v. *Siberell*, 214 Cal. 767 [7 Pac. (2d) 1003], namely, unity of title.

In California there has been recognized and established an exception to the application of this rule which to me seems to have become a rule of property that now must be followed. The exception found its definite origin in *Estate of Harris*, 169 Cal. 725 [147 Pac. 967]. There a husband and wife had

agreed that all property held and acquired by them should be held together in joint ownership as joint tenants. They opened a bank account as joint tenants with the right of survivorship. With money withdrawn from this account they purchased corporate stock and some of the certificates were issued in the name of the husband. The Supreme Court held that this stock retained the character of the joint tenancy and formed no part of the husband's estate.

A similar situation was presented in the case of *In re Kessler*, 217 Cal. 32 [17 Pac. (2d) 117], in respect to a deposit of $600 in the individual bank account of a cotenant. It was there said: "The balance, $600, represented interest paid by the maker on one of the notes held in joint tenancy, and the court was justified in finding, as with the above-mentioned notes, that the proceeds took on the character of the property with which they were acquired, and were consequently held in joint tenancy." (See, also, *Young* v. *Young*, 126 Cal. App. 306 [14 Pac. (2d) 580]; *Chamberlain* v. *Chamberlain*, 2 Cal. App. (2d) 684 [38 Pac. (2d) 790]; *Estate of McCoin*, 9 Cal. App. (2d) 480 [50 Pac. (2d) 114], and cases there cited.)

From the foregoing cases, and others that might be cited, it would seem to me to follow that in California where property is purchased with funds of the joint tenancy and title is placed in the name of one of the joint tenants it will retain its character as joint tenancy property unless there be facts from which the reasonable inference may be drawn that the cotenants agreed that the joint tenancy in the newly acquired property be terminated and it be held in a different estate. In the instant case there were such facts which justified the trial judge in drawing such an inference. (See *Estate of Putnam*, 219 Cal. 608 [28 Pac. (2d) 27].)

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1936.