[No. S006951. Apr. 2, 1990.]

Estate of FLOYD D. PROPST, Deceased.
GRAPLE EULA PROPST, Petitioner and Respondent, v.
NETA STILLMAN et al., Objectors and Appellants.

450

**COUNSEL**

Anderson & Drossel and Norlen E. Drossel for Objectors and Appellants.

Watson, Hoffe & Barbieri, Francis A. Watson, Jr., Karen R. Barbieri and Dean E. Barbieri for Petitioner and Respondent.

**OPINION**

**KENNARD, J.**—The issue we consider in this case is whether a joint tenancy in personal property, such as a joint tenancy bank account, may be severed by the unilateral action of one joint tenant.

Under the common law, a joint tenant had the right to sever a joint tenancy in either real or personal property without the consent of the other joint tenants; thus joint tenants could dispose of their interest in the property free of the right of survivorship. In California, however, a line of

decisions by this court and the Court of Appeal has held that, in the absence of contrary agreement, the proceeds of *personal* property held in joint tenancy retain their joint tenancy character even when those proceeds are held in the name of only one joint tenant. (E.g., *Fish* v. *Security-First Nat. Bank* (1948) 31 Cal.2d 378, 387 [189 P.2d 10].) Under this rule, a joint tenant is powerless to defeat the right of survivorship (the principal characteristic of joint tenancy) by severing the joint tenancy unilaterally.

Deeming itself bound by these decisions, but disclaiming approval of their wisdom, the Court of Appeal in this case "reluctantly" upheld the claim of a widow to all the funds that her deceased husband had withdrawn from their joint tenancy bank accounts and placed in new accounts under his name alone, even though the husband had intended thereby to defeat her survivorship interest. We reverse the decision of the Court of Appeal, disapprove the earlier holdings, and hold that, in the absence of prior contrary agreement, joint tenancies in personal property, like joint tenancies in real property, may be unilaterally severed.

The prior rule is not only inconsistent with the common law and based on a flawed interpretation of the leading case (*Estate of Harris* (1915) 169 Cal. 725 [147 P. 967] [*Harris I*]), it also defeats joint tenants' prevailing expectations that they will be able to deal with their property interests unilaterally. The Court of Appeal's decision in this case has given rise to concerns that, while the joint tenants are still alive, each joint tenant should be free to sever his or her own undivided interest and thus terminate the other joint tenant's survivorship right to the entire joint tenancy property (e.g., a bank account) or its proceeds, particularly when the joint tenants are husband and wife. (See 20 Cal. Law Revision Com. Rep. (Feb. 1989) pp. 102-105, 137-139.) Such concerns are by no means new. (See, e.g., Note, *Joint Tenancy: Character of Personal Property Acquired with Withdrawals from Joint Bank Accounts* (1940) 28 Cal.L.Rev. 224, 226.)

Because of these concerns, the California Law Revision Commission recommended and the Legislature enacted statutory changes, effective July 1, 1990, that prospectively apply the substance of our present holding to joint tenancy accounts with banks and savings and loan associations. (Prob. Code, § 5128; *id.*, § 5303, subd. (c), as amended by Stats. 1989, ch. 397, § 30, No. 4 Deering's Adv. Legis. Service, pp. 1335-1336 [adding subdivision (c) to section 5303].) Though these statutory provisions come too late to apply directly to the case before us, they reflect a legislative policy, to which our present holding will give effect, with respect to all personal property held in joint tenancy. Our holding also is more likely than the prior rule to accord with the expectations of most joint tenants. Accordingly, we have concluded that our present holding shall be given retroactive

effect unless the party claiming the right of survivorship proves that application of the holding would cause the party substantial detriment as a result of the party's reasonable reliance upon the prior rule.

## FACTS

Respondent Graple Eula Propst is the widow of Floyd D. Propst. They were married on April 18, 1962; each had a child of a prior marriage. Appellant Neta Stillman is the daughter of the decedent's prior marriage. In 1976, the decedent and respondent executed "mirror wills," which provided that the survivor was to inherit the entire estate, and that upon the death of the survivor the estate was to be divided equally between the two children.

The decedent and respondent had a number of bank accounts, which they held in joint tenancy. In February 1983, the decedent withdrew all of the funds from two of these accounts; in October and early November 1983, he closed six additional bank accounts and immediately deposited those funds in accounts in his name alone. His intent in closing the accounts was to sever the joint tenancy, thus cutting off respondent's right of survivorship.

On November 7, 1983, the decedent executed a will that, among other things, confirmed respondent's interest in their community property; named appellant Neta Stillman as his residuary beneficiary; and appointed his attorney, appellant Robert Rigney, as executor. Two weeks later, the decedent died.

Attorney Rigney then filed a "Petition for Probate of Will and for Letters Testamentary," and in January 1985 respondent filed an "Amended Petition for Determination of Entitlement to Estate Distribution." Respondent alleged that the decedent had withdrawn the funds from the joint tenancy bank accounts without her consent or knowledge. She also asserted that funds from the two accounts the decedent had unilaterally closed in February 1983 "were drawn on cashier's check Nos. 3011 and 3036." She sought a determination that the funds the decedent had withdrawn from their joint bank accounts and deposited in bank accounts in his name alone remained joint tenancy property, and that title to the individual accounts and to the two cashier's checks had passed to her outside of the probate estate. Following a trial, the trial court so ruled.

Underlying the trial court's ruling was its reasoning that a party to a joint tenancy in personal property could not change the character of the joint tenancy without an agreement to do so. Therefore, the trial court concluded, the decedent's attempts "to terminate the joint tenancy by withdrawing funds . . . and placing them in his name alone did not change the nature of

the funds," which went to respondent, upon the decedent's death, by operation of law.

The decedent's daughter, Neta Stillman, and Robert Rigney, as executor of the estate, appealed. The Court of Appeal "reluctantly" affirmed the judgment. The court noted that the trial court's decision was "based on a line of authority applicable only to joint tenancy in personal property that has developed in California on the strength of two oft-cited and misinterpreted California Supreme Court decisions: *Estate of Harris* (1915) 169 Cal. 725 [*Harris I*] . . . and *Estate of Harris* (1937) 9 Cal.2d 649 . . . ." The Court of Appeal further observed that were it not for the fact that this court had cited *Harris I* as support for the rule of law applied by the trial court (see, e.g., *Fish* v. *Security-First Nat. Bank, supra,* 31 Cal.2d 378, 387), the Court of Appeal would have held that, "as is the case with severance of joint tenancies in real property, a joint tenant in personal property may sever the joint tenancy without the consent of his or her cotenants by an act which unambiguously establishes his or her desire to terminate the estate." The Court of Appeal concluded that in light of its "limited authority as an intermediate appellate court" (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), it was compelled to affirm the trial court's judgment.[1]

The Court of Appeal further held that the current provisions of the Probate Code relating to the determination of ownership in joint bank accounts (Prob. Code, § 5301 et seq.) did not compel a different conclusion because those provisions applied only to credit unions and industrial loan companies. (Prob. Code, § 5101.) As already mentioned, the Legislature has since significantly broadened those provisions on the recommendation of the California Law Revision Commission. (See Prob. Code, §§ 5128, 5303, subd. (c).)

---

[1] The Court of Appeal also held that there was insufficient evidence to support the trial court's finding that one of the cashier's checks (check No. 3011) had been acquired with joint tenancy funds. In addition, because the issue had been neither presented to nor decided by the trial court, it rejected appellants' argument that the funds deposited in the accounts were intended to be community property funds. It further rejected the contention that the trial court had erred in finding that a $30,000 certificate of deposit was held in joint tenancy. Appellants do not now challenge these holdings. Also not in issue here are the trial court's rulings relating to shares of stock, proceeds from the sale of a mobilehome, title to a house, household furnishings, and a gift of $20,000.

Accordingly, community property rights are not in issue here. Nor does this decision address any issue involving the agreement to execute "mirror wills," other than the question whether the "mirror wills" constituted an agreement between the decedent and respondent to hold all property as joint tenants. Respondent did not attempt to enforce the "mirror will" agreement. And, because appellants concede that respondent "is without question entitled to one-half" of the joint tenancy accounts the decedent had closed, this case does not present any issue concerning the respective interests of the parties immediately following the decedent's unilateral severance of the accounts.

## DISCUSSION

### 1. *Unilateral Severance of a Joint Tenancy in Personal Property*

■  California's judicially developed rule prohibiting unilateral severance of a joint tenancy in personal property is an unwarranted departure from the common law. The rule seems to stem from a misunderstanding of the 1915 decision in which the rule was thought to originate (*Harris I, supra,* 169 Cal. 725), rather than from an analysis of the rule's intrinsic merits.

■  Under the common law, to create a joint tenancy a conveyance must convey "to two or more persons at the same time the same title to the same interest with the same right of possession." (4A Powell on Real Property (rev. ed. 1989) ¶ 615[1], p. 51-2; see Civ. Code, § 683.) In other words, creation of a joint tenancy requires these four unities: time, title, possession, and interest. A joint tenant simultaneously possesses both the entire tenancy and an equal, undivided share of the tenancy. (See 4A Powell on Real Property, *supra,* ¶ 617 at p. 51-9; 2 Tiffany, The Law of Real Property (3d ed. 1939) § 418, p. 196.)

■  The principal characteristic of joint tenancy is the right of survivorship. At common law, the destruction of one of the essential unities severs the joint tenancy and extinguishes the right of survivorship. (4A Powell on Real Property, *supra,* ¶ 618[1] at pp. 51-14 & 51-15.) As we observed in *Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 155-156 [133 Cal.Rptr. 10, 554 P.2d 330], "[A] joint tenant's right of survivorship is an expectancy that is not irrevocably fixed upon the creation of the estate [citation]; it arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance [citation], by partition proceedings [citations], by involuntary alienation under an execution [citations], or by any other action which operates to sever the joint tenancy."

■  The common law recognizes the right of a joint tenant to sever the joint tenancy, without the knowledge or consent of the other joint tenants, by conveyance or other acts inconsistent with the continuance of one of the essential unities. (See, e.g., *Tenhet* v. *Boswell, supra,* 18 Cal.3d at p. 155; *Delanoy* v. *Delanoy* (1932) 216 Cal. 23, 26 [13 P.2d 513]; 4A Powell on Real Property, *supra,* ¶ 618[1] at p. 51-14; 2 Tiffany, The Law of Real Property, *supra,* § 425 at pp. 208-209.) Severance of the joint tenancy converts the joint tenancy into a tenancy in common. (4A Powell on Real Property, *supra,* ¶ 618[1] at p. 51-14.) Because a tenant in common also has an undivided fractional interest in the property (*id.,* ¶ 601[1] at p. 50-2), the

unilateral severance of the joint tenancy by a joint tenant does not deprive other joint tenants of their fractional shares. (*Id.*, ¶ 618[1] at pp. 51-14 & 51-15.)

With respect to real property, California courts have consistently applied the common law principle that "[a]n indisputable right of each joint tenant is the power to convey his or her separate estate by way of gift or otherwise without the knowledge or consent of the other joint tenant and to thereby terminate the joint tenancy." (*Riddle* v. *Harmon* (1980) 102 Cal.App.3d 524, 527 [162 Cal.Rptr. 530, 7 A.L.R.4th 1261]; see, e.g., *Tenhet* v. *Boswell, supra,* 18 Cal.3d at pp. 155-156; *Wilk* v. *Vencill* (1947) 30 Cal.2d 104, 108-109 [180 P.2d 351].) As to joint tenancies in personal property, however, California case law has diverged from the common law by prohibiting a joint tenant from severing the joint tenancy without the consent of the cotenants. (See, e.g., *Fish* v. *Security-First Nat. Bank, supra,* 31 Cal.2d at p. 387; *Wallace* v. *Riley* (1937) 23 Cal.App.2d 654, 665 [74 P.2d 807].) This divergence is based on a misinterpretation of certain language in *Harris I, supra,* 169 Cal. 725.

In *Harris I,* the decedent and his spouse had orally agreed that all the property held or acquired by either one during the marriage would be held in joint tenancy. Consistent with their agreement, they opened a joint bank account. With money from that account, they then bought corporate stock, and agreed that "the title thereto should be taken and held by them as joint tenants in the same manner as the money was deposited." (*Harris I, supra,* 169 Cal. at p. 727.)

Following the death of her husband, Mrs. Harris was appointed administratrix of his estate. She filed a final accounting that did not include the property acquired with funds from the joint account. The decedent's sister challenged the accounting; she claimed that the joint property was either the decedent's separate property or community property, and this had not passed to his wife as the surviving joint tenant.

In rejecting the sister's claim in *Harris I,* this court observed that the case was "not essentially different from" *Kennedy* v. *McMurray* (1915) 169 Cal. 287 [146 P. 647], and explained: "The property acquired with money taken from the bank account would retain the character of joint property, the same as the money with which it was obtained, *unless by some agreement between the parties its character was changed. No such agreement was made,* but *the contrary was agreed upon.* On the authority of the case of *Kennedy* v. *McMurray,* [*supra,* 169 Cal. 287, 293-294,] the order of the court below is correct." (*Harris I, supra,* 169 Cal. at p. 728, italics added.)

The *Kennedy* decision relied upon in *Harris I* enforced an agreement that all funds deposited in a bank account were to be held in joint tenancy. *Harris I* simply extended the holding of *Kennedy* by enforcing the agreement of the decedent and his wife that not only funds in the bank account but also any property acquired with those funds would be held in joint tenancy. (See Note, *Joint Tenancy: Character of Personal Property Acquired with Withdrawals from Joint Bank Accounts, supra,* 28 Cal.L.Rev. 224, 225.) This interpretation is consistent with the common law. (See 4A Powell on Real Property, *supra,* ¶ 618[1] at p. 51-14.) Nothing in *Harris I* suggests that the decedent ever attempted to sever the joint tenancy or to breach the agreement with his wife that all of their property would be held in joint tenancy.

Nevertheless, subsequent decisions interpreted *Harris I* as establishing a rule—contrary to the common law—that the proceeds of a joint tenancy in personal property retain their joint tenancy character unless there is an agreement to the contrary. (See, e.g., *In re Kessler* (1932) 217 Cal. 32, 34-35 [17 P.2d 117]; *Estate of McCoin* (1935) 9 Cal.App.2d 480, 482-483 [50 P.2d 114]; *Young v. Young* (1932) 126 Cal.App. 306 [14 P.2d 580].) In 1937, in *Estate of Harris* (1937) 9 Cal.2d 649 [72 P.2d 873] [*Harris II*], this court, following the death of Mrs. Harris, decided a dispute over the distribution of *real* property acquired by the Harrises. There, the court observed that *Harris I* "laid down the rule that joint tenancy property may be traced into personal property and the personal property so acquired with joint tenancy funds will be deemed to be held in joint tenancy, in the absence of an agreement to the contrary, regardless of the circumstance that title to said acquired property may be held by only one of the joint tenants." (*Harris II, supra,* 9 Cal.2d at pp. 654-655.) Though acknowledging that this interpretation "appears to be contrary to the common law rule," *Harris II* concluded that "this exception to the common law rule, which had its origin in *Estate of Harris, supra* [*Harris I*], has become the recognized and established law of this state, and has been followed in numerous recent decisions. [Citations.]" (*Id.* at p. 655.)

But *Harris II* retained the common law rule regarding severance of a joint tenancy in *real* property. As it explained: "It is one of the incidents of joint tenancy that either joint tenant may convey his separate property estate by way of gift or otherwise without the approval or consent of his other joint tenant, and upon such conveyance the joint tenancy is terminated. [Citation.] This incident of joint tenancy ownership must be presumed to have been in the contemplation of the parties at the time of the creation of the joint tenancy ownership." (*Harris II, supra,* 9 Cal.2d at p. 659.)

*Harris II* is devoid of any explanation why a joint tenant of real property has the power to destroy the other joint tenants' survivorship rights through

severance, whereas a joint tenant of personal property lacks such power, unless there is an agreement to the contrary.[2] Notwithstanding this absence of analytical explanation, and the acknowledgement that requiring the consent of all cotenants to effectuate a severance of a joint tenancy in personal property was contrary to the common law, this court has since adhered to its judicially developed exception to the common law rule with respect to personal property. (*Fish* v. *Security-First Nat. Bank, supra,* 31 Cal.2d at p. 387.)

■ We now conclude that the exception serves no constructive purpose and should be abrogated. Though the exception was once viewed as a binding "rule of property" even before *Harris II* (*Lagar* v. *Erickson* (1936) 13 Cal.App.2d 365, 369 [56 P.2d 1287] [conc. opn.]), judicially formulated rules of property carry special weight only because of the reliance placed upon them in property transactions (*City of Berkeley* v. *Superior Court* (1980) 26 Cal.3d 515, 532 [162 Cal.Rptr. 327, 606 P.2d 362]; *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 240-241 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 456-457 [326 P.2d 484]). Here, not only does there appear no widespread reliance on a right of survivorship in joint tenancy personal property immune from a joint tenant's unilateral act of severance, but the layperson's likely expectation is that the joint tenancy *may* be unilaterally severed in the absence of contrary agreement.

As noted earlier, the distinguishing characteristic of joint tenancy is the right of survivorship, which "arises only upon success in the ultimate

---

[2] *Harris II* held only that *personal* property acquired with joint tenancy proceeds is deemed held in joint tenancy in the absence of a contrary agreement, noting that all of the decisions that had followed *Harris I* affected personal property only. (*Harris II, supra,* 9 Cal.2d at pp. 654-655.) In *Wheeland* v. *Rodgers* (1942) 20 Cal.2d 218, 221 [124 P.2d 816], the court undertook to explain this distinction, saying, "The reason for the difference in the rule between real and personal property is that a joint tenancy in real property cannot be created by oral agreement. (Civ. Code, § 683; *Estate of Harris, supra* [apparently referring to *Harris I, supra,* 169 Cal. at p. 726]." (See also *Harris II, supra,* 9 Cal.2d at p. 654.) While the power to create a joint tenancy in personal property by oral agreement appears essential to the existence of the joint tenancy in *Harris I,* it is unclear why such power should be thought to affect either joint tenant's right of unilateral severance in the *absence* of contrary agreement.

In any event, in 1935, the Legislature amended Civil Code section 683, which governs the creation of joint tenancies, to provide that "[a joint tenancy in personal property may be created by a written transfer, instrument or agreement." (Stats. 1935, ch. 234, § 1, p. 912.) Thereafter, we held that, notwithstanding the statute's use of the permissive word "may," the amendment prohibited the creation of a joint tenancy in personal property by oral agreement. (*California Trust Co.* v. *Bennett* (1949) 33 Cal.2d 694, 697 [204 P.2d 324] [rejecting a claim of joint tenancy in the contents of a safe-deposit box].) Statutes governing banks and savings and loan associations, however, have been interpreted to permit the true character and ownership of funds in joint tenancy accounts to be established by evidence, including oral testimony, of the parties' actual agreement and understanding. (*Paterson* v. *Comastri* (1952) 39 Cal.2d 66, 71 [244 P.2d 902]; *Estate of Drucker* (1984) 152 Cal.App.3d 509, 513-514 [199 Cal.Rptr. 345]; *Estate of Zeisel* (1983) 143 Cal.App.3d 516, 525-526 [192 Cal.Rptr. 25].)

gamble—survival. . . ." (*Tenhet* v. *Boswell, supra,* 18 Cal.3d at p. 156.) But under the present, judicially developed California rule, a joint tenancy in personal property may be terminated only with the consent of the other joint tenants, thereby negating the contingent nature of the right of survivorship. If any joint tenant refuses to consent to a severance, the rule creates, in effect, an irrevocable will in personal property. In the absence of evidence to the contrary, it is difficult to accept the proposition that parties to a joint tenancy intend to divest themselves of their respective interests to this extent.

The adverse consequences of a rule so manifestly contrary to general expectations were pointed out half a century ago in a comment advocating the result we now reach. In words no less pertinent today, the comment observed: "It is highly possible . . . that an entire estate may go through [a joint tenancy] account, and if a testator in his will leaves to his children corporate stocks or bonds or other personal property acquired with funds from the account, his plainly expressed desire would go for naught. If he left an insurance policy, the premiums for which were paid by check upon the account, his naming of a beneficiary would have no effect, except perhaps to cause a lawsuit." (Note, *Joint Tenancy: Character of Personal Property Acquired with Withdrawals from Joint Bank Accounts, supra,* 28 Cal.L.Rev. 224, 226.)

Similarly, the California Law Revision Commission, expressly referring to the holding of the Court of Appeal in this case, gave these reasons for recommending legislative modification of the existing rule: "[P]ractitioners generally agree that remedial legislation is urgently needed . . . to permit a joint tenant having a present right of withdrawal to eliminate survivorship rights in a joint tenancy bank account without the consent of the other joint tenants . . . ." (20 Cal. Law Revision Com. Rep. (Feb. 1989) pp. 104-105.) "Family law practitioners are concerned about the limitation on the ability of one spouse to eliminate survivorship rights in a joint account held by a married couple in a bank or savings and loan association. Where the spouses are estranged, one spouse cannot by unilateral action terminate the rights of survivorship with respect to funds in a joint account. As a result, after the death of one spouse, the surviving spouse may make a claim based on the survivorship right to funds withdrawn from a joint account by the deceased spouse or to property the deceased spouse acquired with those funds. . . . [¶] Estate planning also is hampered by the inability of one party to a joint account in a bank or savings and loan association to eliminate survivorship rights by either changing the terms of the account or withdrawing funds from the account. Moreover, if a joint tenant cannot eliminate the right of survivorship by withdrawing the funds from the joint account, the likelihood of litigation is increased because the joint tenant will

attempt to defeat the right of survivorship by seeking to establish that the account was not a true joint tenancy account." (*Id.* at pp. 103-104.)

Our holding in this case, that a joint tenant of personal property is free to sever his or her interest from the joint tenancy in the *absence* of an agreement to the contrary, by no means precludes giving effect to an affirmative agreement against unilateral severance. Thus, we do not disavow *Harris I, supra,* 169 Cal. 725, insofar as it simply gave effect to such an agreement. Nor does today's holding alter existing rights to establish the true character and ownership of funds in joint tenancy accounts by evidence, including oral testimony, of the parties' actual agreement and understanding. (See *Paterson* v. *Comastri, supra,* 39 Cal.2d 66, 71; *Estate of Drucker, supra,* 152 Cal.App.3d 509, 513-514; *Estate of Zeisel, supra,* 143 Cal.App.3d 516, 525-526, cited in fn. 2, *ante.*)

Respondent contends that any change in the law prohibiting unilateral severance of joint tenancies in personal property should be made by the Legislature. She argues that provisions of the California Multiple-Party Accounts Law (Prob. Code, § 5100 et seq.), added in 1983 to take effect on July 1, 1984 (Stats. 1983, ch. 92, § 5), reflect a legislative determination that only joint tenancy accounts in credit unions and industrial loan companies may be unilaterally severed. This law, which until July 1, 1990, applies only to credit unions and industrial loan companies (Prob. Code, § 5101, subd. (c)), provides that the terms of a multiple-party account (Prob. Code, § 5101, subds. (d), (e)) may be changed by "[c]losing the account and reopening it under different terms" (Prob. Code, § 5303, subd. (b)(1)), by presenting "a modification agreement that is signed by all parties with a present right of withdrawal" (*id.,* § 5303, subd. (b)(2)), or by complying with a method of modification provided by the terms of the account or deposit agreement (*id.,* § 5303, subd. (b)(3)).

As the California Law Revision Commission's comment on Probate Code section 5101 explains: "The limitation of this part to credit unions and industrial loan companies is not intended to preclude a court from applying a rule set out in Chapter 3 (commencing with Section 5301) to a multiple-party account in another type of financial institution." (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code, § 5101 (1990 supp. pamp.) p. 116 [Deering's Ann. Prob. Code, § 5101 (1990 supp.) p. 71].) The legislative intent not to preclude judicial development is thus clear.[3]

---

[3] Respondent contends that the means of changing a multiple-party account provided by the current version of Probate Code section 5303, subdivision (b), do not encompass unilateral severance. (But see Cal. Law Revision Com. com., 54A West's Ann. Prob. Code, § 5303 (1990 supp. pamp.) pp. 134-135 [Deering's Ann. Prob. Code, § 5303 (1990 supp.) p. 82].) We need not address this contention because the provisions in question do not apply to this case,

Respondent also argues that Civil Code section 683.2 is indicative of the Legislature's intent not to permit unilateral severance of bank accounts held in joint tenancy. That provision, which was enacted in 1984 (Stats. 1984, ch. 519, § 1, p. 2065), sets forth several means of severing a *real* property joint tenancy, including a severance by transfer of a joint tenant's interest to himself or herself. But the statute itself expressly provides that its provisions for means of severance are not exclusive. (Civ. Code, § 683.2, subd. (a).) Nor are we aware of any other statutory provision that would preclude our changing the present, judicially created rule prohibiting unilateral severance of joint tenancies in personal property.

To the contrary, recent legislative action lends significant support to our present holding. While this case was pending before this court, the Legislature amended the California Multiple-Party Accounts Law (Prob. Code, § 5100 et seq.) to extend its provisions to banks and savings and loan associations (Prob. Code, § 5128; Stats. 1989, ch. 397, § 25, No. 4 Deering's Adv. Legis. Service, p. 1331) and to provide that "[w]ithdrawal of funds from the account by a party with a present right of withdrawal during the lifetime of a party also eliminates rights of survivorship upon the death of that party with respect to the funds withdrawn" (Prob. Code, § 5303, subd. (c), as amended by Stats. 1989, ch. 397, § 30, No. 4 Deering's Adv. Legis. Service, pp. 1335-1336 [adding subdivision (c) to section 5303]). The amendments will take effect on July 1, 1990, and apply to accounts in existence on that date and those established thereafter. (Stats. 1989, ch. 397, §§ 41, 42, No. 4 Deering's Adv. Legis. Service, p. 1339.) But for their prospective effect, the amendments would have caused termination of respondent's right of survivorship in the funds withdrawn by the decedent from their joint bank accounts.

These new statutory provisions were enacted in direct response to the report of the California Law Revision Commission, quoted earlier, criticizing the holding of the Court of Appeal in this very case and calling for a lifting of the prohibition against unilateral severance of joint tenancy interests in bank accounts. (See 20 Cal. Law Revision Com. Rep. (Feb. 1989) pp. 102-106, 138.) Though not directly applicable to the present controversy, the new provisions persuasively reflect legislative policy (*Green* v. *Superior Court* (1974) 10 Cal.3d 616, 627, 636 [111 Cal.Rptr. 704, 517 P.2d 1168]) and "constitute an appropriate model for this court to adopt" (*Estate of Mason* (1965) 62 Cal.2d 213, 217 [42 Cal.Rptr. 13, 397 P.2d 1005]). (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 762, pp. 729-730.)

Accordingly, we hold that in the absence of prior contrary agreement, a joint tenant of personal property may unilaterally sever his or her own

and because an amendment to the section, effective July 1, 1990, adds subdivision (c), which expressly provides for unilateral severance.

interest from the joint tenancy and thereby nullify the right of survivorship, as to that interest, of the other joint tenant or tenants without their consent. We construe *Harris I, supra,* 169 Cal. 725, 728, as consistent with this holding. Our holdings to the contrary in *Fish* v. *Security-First National Bank, supra,* 31 Cal.2d 378, 387, *Harris II, supra,* 9 Cal.2d 649, and *In re Kessler, supra,* 217 Cal. 32, 34, are overruled. Statements in the following cases inconsistent with this holding are disapproved: *Estate of Drucker, supra,* 152 Cal.App.3d 509, 512; *Estate of Zeisel, supra,* 143 Cal.App.3d 516, 524; *Taylor* v. *Crocker-Citizens Nat. Bank* (1968) 258 Cal.App.2d 682, 685 [65 Cal.Rptr. 771]; *Cordasco* v. *Scalero* (1962) 203 Cal.App.2d 95, 105 [21 Cal.Rptr. 339]; *Doran* v. *Hibernia Savings & Loan Soc.* (1947) 80 Cal.App.2d 790, 795 [182 P.2d 630]; *Wallace* v. *Riley, supra,* 23 Cal.App.2d 654, 665; *Lagar* v. *Erickson, supra,* 13 Cal.App.2d 365, 368; *Estate of McCoin, supra,* 9 Cal.App.2d 480.

Respondent maintains she is entitled to the funds from the joint tenancy bank accounts because, as in *Harris I,* there was an agreement between herself and her deceased husband to hold all of their property as joint tenants. She relies on the execution of "mirror wills" as constituting evidence of the requisite agreement. The agreement to execute "mirror wills," however, pertained only to the disposition of the property that would be subject to probate administration upon either spouse's death. Joint tenancy property, which passes by right of survivorship, is not subject to such administration. (*Guardianship of Wood* (1961) 193 Cal.App.2d 260, 267 [14 Cal.Rptr. 147].) Moreover, as noted earlier, respondent did not seek to enforce the "mirror will" agreement. (See fn. 1, *ante.*)

### 2. *Retroactive Application of Our Holding*

■ Respondent urges that because the present rule prohibiting unilateral severance of a joint tenancy in personal property is well established and a change in the law was not reasonably foreseeable, we should not give retroactive effect to our holding abrogating this rule.

■ Generally, judicial decisions are applied retroactively. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059].) This general principle is subject to two virtually universal exceptions, based on considerations of fairness and public policy. A decision announcing a change in a judicial rule of law is rarely, if ever, a basis for disturbing a final judgment based on the prior rule. (*Id.* at p. 993; see *In re Marriage of Brown* (1976) 15 Cal.3d 838, 850-851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) Nor will the new decision be applied to impair contracts made or property rights acquired in accordance with the prior rule. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d

287, 305 [250 Cal.Rptr. 116, 758 P.2d 58]; *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 151-152 [181 Cal.Rptr. 784, 642 P.2d 1305]; *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) Thus, our present holding would not be a basis for attacking a judgment that has become final before the finality of this decision and enforces a right of survivorship based on the now abrogated rule. Nor would our holding give rise to a claim on property that had already been transferred to a surviving party, in reliance on the prior rule, before this decision became final.

Fairness and public policy may be the basis for additional exceptions to retroactivity. (*Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d 973, 983; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 305.) Considerations of public policy include the purpose of the new rule and the effect of retroactivity on the administration of justice.[4] The issue of fairness encompasses the extent of reliance on the old standards by the parties or others similarly situated, and the ability of litigants to foresee a change in the law. (*Peterson* v. *Superior Court, supra,* 31 Cal.3d 147, 153; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 193 [98 Cal.Rptr. 837, 491 P.2d 421].)

The circumstance most strongly militating against full retroactivity of our present holding is its unforeseeability to counsel. This court's application of the former rule in 1932 (*In re Kessler, supra,* 217 Cal. 32, 34-35), along with other appellate decisions, caused the former rule to be judicially characterized in 1936 as a rule of property that must be followed. (*Lagar* v. *Erickson, supra,* 13 Cal.App.2d 365, 369 [conc. opn. of Marks, J.].) In 1937, this court described the rule as "the recognized and established law of this state, [which] has been followed in numerous recent decisions." (*Harris II, supra,* 9 Cal.2d at p. 655.) We reaffirmed the rule in 1948 (*Fish* v. *Security-First Nat. Bank, supra,* 31 Cal.2d 378, 387), and it was thereafter reiterated in a number of decisions of the Courts of Appeal, two decided as recently as 1983 and 1984. (See *Estate of Drucker, supra,* 152 Cal.App.3d 509, 512; *Estate of Zeisel, supra,* 143 Cal.App.3d 516, 523-524.) The decision of the Court of Appeal in this case appears to be the first to criticize the rule as having originated in a misinterpretation of statements in *Harris I.*

---

[4] Concern for the administration of justice has been a basis for withholding retroactive application of a newly announced decisional rule when there is a substantial volume of pending lawsuits that were filed in reliance on the prior rule. (See, e.g., *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 305; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. But see *Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d 973, 991-992 [declining to modify retroactive application].) Here, there is no indication of any substantial number of pending cases involving the issue of unilateral severance of a joint tenancy in personal property. Therefore, there is no effect on the administration of justice that might lead us to withhold retroactive application of our present decision.

Offsetting this unforeseeability of our holding to the legal community is the likelihood that most individuals have conducted their affairs in reliance upon the principle we adopt today, rather than upon the rule mistakenly perceived in *Harris I*, which created an essentially indestructible right of survivorship in joint tenancy personal property contrary to the common law. Although the survivorship aspect of joint tenancy may well be the basis upon which a number of people place personal property in joint tenancy, which is sometimes referred to as "the poor man's will," it is doubtful that many joint tenants know, or intend, that their personal property will be held in joint tenancy irrevocably unless there is a unanimous agreement by all joint tenants to sever. Thus, few, if any, persons in respondent's situation seem likely to have relied on the prior rule.

Most joint tenancies in personal property are not created by attorneys or based on legal consultation and advice. The use of personal property joint tenancies, particularly in the context of bank accounts, is widespread; the rule of law regarding the right to survivorship is well known and is often the inducement for individuals to place their personal property in joint tenancy. The prior rule against unilateral severance, however, is probably unknown to the layperson. (See Note, *Joint Tenancy: Character of Personal Property Acquired with Withdrawals from Joint Bank Accounts, supra,* 28 Cal.L.Rev. 224, 226.)

Nonetheless, there may be instances of persons who have incurred legal obligations or forgone substantial benefits in reasonable reliance, prior to this decision, upon the prior rule against unilateral severance. For example, a person may have contracted for an estate plan, or forgone an opportunity to purchase life insurance, in reliance on a lawyer's advice that personal property held by the person in joint tenancy could not be unilaterally severed by the other joint tenant. If a party claiming a right of survivorship proves such reliance, and further proves that application of the new rule instead of the prior rule would therefore cause the party substantial detriment, the right of survivorship may be enforced in accordance with the former rule. (*City of Berkeley* v. *Superior Court, supra,* 26 Cal.3d 515, 533-534; *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 954 [148 Cal.Rptr. 379, 582 P.2d 970]; *County of Los Angeles,* v. *Faus, supra,* 48 Cal.2d 672, 681.) The resulting detriment must be substantial; mere disappointment of expectations is insufficient. (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d 943, 954; see *Willard* v. *First Church of Christ, Scientist* (1972) 7 Cal.3d 473, 478-479 [102 Cal.Rptr. 739, 498 P.2d 987].)

Respondent now asserts that she and decedent in fact understood and relied on the prior rule in formulating their estate plan. Because the trial court applied the prior rule, respondent had no occasion to prove the

reasonable reliance and substantial detriment sufficient to avoid application of our present holding. Accordingly, the cause must be remanded to afford respondent an opportunity to present such proof.

DISPOSITION

The judgment of the Court of Appeal is reversed to the extent that it upholds the claims of respondent Graple Eula Propst as surviving joint tenant; in all other respects the judgment is affirmed. The cause is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Lucas, C. J., Panelli, J., Eagleson, J., and Kaufman, J.,* concurred.

MOSK, J., Concurring and Dissenting.—I concur in the well-reasoned opinion of the majority. I part company only on the issue of retroactivity.

It is truly heroic to overrule a long line of cases originating 75 years ago (*Estate of Harris* (1915) 169 Cal. 725 [147 P. 967]). Such action is understandable, however, when a contemporary view of the issue compels a more rational approach.

But this newly devised concept does not justify reflecting on the validity of action taken by countless persons in reliance on numerous decisions by this court and by Courts of Appeal over the past seven and a half decades.

Whatever may be the logic of the proposition that overruling is generally retroactive, Witkin points out, "the retrospective effect of an overruling decision can cause a great deal of harm to innocent persons. And it would seem that the court, which by its former erroneous decision induced the conduct or action now condemned, ought to do something to protect such persons. The solution which has attracted considerable support is for the reviewing court, in circumstances where retroactivity would cause great hardship, to make its decision expressly prospective; i.e., overrule the prior case for the future, but follow it in the case at hand. That this practice is constitutional was authoritatively declared in *Great Northern Ry., Co.* v. *Sunburst Oil & Refining Co.* (1932) 287 U.S. 358 . . . ." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 813, p. 795.)

In *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059], a four-to-three majority of the court held *Foley* v.

---

* Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

*Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] to be retroactive substantially on two grounds. First, it was said that the law was unsettled because *"Foley* did not address an area in which *this* court had previously issued a definitive decision" (italics added), as distinguished from "a consistent line of Court of Appeal cases." (*Newman, supra,* 48 Cal.3d at p. 986.) The majority implied that a rule of law is not determined by Courts of Appeal, but only by an opinion of this court, a unique theory. Second, the Court of Appeals' "doctrine stood for less than six years . . . ." (*Ibid.*) The implication is that there was not lengthy reliance on the earlier authority.

Neither of those factors applies to the instant case. The concept being overruled originated not with Courts of Appeal, but with *this* court. And it was not a mere six years ago or less, but seventy-five years ago.

There are at least four opinions of this court, not Courts of Appeal, that held there is a distinction between real and personal property in joint tenancy. (*Estate of Harris, supra,* 169 Cal. 725; *Fish* v. *Security-First Nat. Bank* (1948) 31 Cal.2d 378 [189 P.2d 10]; *Estate of Harris* (1937) 9 Cal.2d 649 [72 P.2d 873]; and *In re Kessler* (1932) 217 Cal. 32 [17 P.2d 117].) Note that all of those authorities are considerably more than six years old.

Courts of Appeal have dutifully followed this court in a long series of cases on which the bench, bar and public were entitled to rely. These include: *Bliss* v. *Martin* (1946) 74 Cal.App.2d 500 [169 P.2d 61]; *Estate of Drucker* (1984) 152 Cal.App.3d 509 [199 Cal.Rptr. 345]; *Estate of Zeisel* (1983) 143 Cal.App.3d 516 [192 Cal.Rptr. 25]; *Taylor* v. *Crocker-Citizens Nat. Bank* (1968) 258 Cal.App.2d 682 [65 Cal.Rptr. 771]; *Cordasco* v. *Scalero* (1962) 203 Cal.App.2d 95 [21 Cal.Rptr. 339]; *Doran* v. *Hibernia Savings & Loan Soc.* (1947) 80 Cal.App.2d 790 [182 P.2d 630]; *Wallace* v. *Riley* (1937) 23 Cal.App.2d 654 [74 P.2d 807]; *Lagar* v. *Erickson* (1936) 13 Cal.App.2d 365 [56 P.2d 1287]; *Estate of McCoin* (1935) 9 Cal.App.2d 480 [50 P.2d 114].

The majority declare it seems likely that few persons relied on the prior rule. They cite no empirical data and I doubt there are any to confirm or refute their ipse dixit declaration. On the contrary, it seems more likely to me that innumerable persons would have been advised by their attorneys that the law in California had been settled by a long series of cases beginning with the highest court in the state. Certainly they would have been justified—indeed compelled—to act consistently with prevailing authority.

How many persons may be affected by the new rule this court pronounces today is wholly speculative. The only way they can be protected without

protracted litigation, after relying on what the judiciary has been declaring for the better part of this century, is to make our current view of the law applicable to this case and thereafter prospective.

**BROUSSARD, J.**, Concurring and Dissenting.—Like Justice Mosk, I concur in the majority opinion except for that portion establishing that our decision will apply retroactively. When I first considered the substantive issue presented by the case, I had difficulty concluding that we ought to overturn a long-standing rule of property law which apparently had not generated much litigation. However, for the reasons stated in the majority opinion, I am now persuaded that for the future the rule should be as the majority establish.

When, as here, we reject a well-established rule that lacked a sound theoretical basis but caused little confusion or dispute, we should make every effort not to make the cure worse than the disease. It is almost as important that property law be predictable as that it be right. When we break with the past in a retroactive opinion, but make substantial reliance on the old rule an affirmative defense, we inevitably engender a far larger volume of litigation than the old rule created. I would prefer to make our opinion take effect prospectively, since I believe this is the only way to cause less disruption and litigation than was caused by the rule we now reject.