Filed 4/5/21  Colmet-Daage v. Cremoux CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ETIENNE COLMET-DAAGE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEVERINE CREMOUX,<br><br>Defendant and Appellant. | H045033<br>(Santa Clara County<br>Super. Ct. No. 1-15-CV275699) |

This action for partition arises out of a former relationship between respondent Etienne Colmet-Daage and appellant Severine Cremoux.  On April 30, 2010, Cremoux granted to Colmet-Daage a joint tenancy interest in certain real property located at 613 Remington Drive, Sunnyvale (the property).  Cremoux had originally acquired the property with her husband in 2002; they separated in or about 2009.  After the relationship between Colmet-Daage and Cremoux ended, Cremoux recorded in October 2013 a Declaration of Severance of Joint Tenancy, thereby creating a tenancy in common ownership in the property.

Colmet-Daage filed this action for partition in January 2015.  Cremoux filed a cross-complaint seeking, inter alia, cancellation of the 2010 joint tenancy grant deed, claiming that Colmet-Daage used undue influence to procure its execution.  The trial court conducted two separate proceedings.  In the first phase of the trial, the court on May 19, 2016, denied the relief sought by Cremoux in her cross-complaint and ordered partition of the property.  In the second phase of the trial in August 2016, the trial court

heard evidence concerning Cremoux's initial investment in the property and the parties' respective contributions for expenses related to the property, including repairs and improvements. After submission, the court filed its tentative decision on November 22, 2016.

Thereafter, while the property was in the process of being sold, Cremoux filed a motion to receive a credit of $200,000 from the sales proceeds. The credit requested was based upon the assertion that posttrial repairs and improvements she made to the property enhanced its value by $200,000. The court denied the motion, concluding that Cremoux had not established that the posttrial work had increased the value of the property. The court filed a judgment on April 25, 2017.

On appeal from the judgment, Cremoux asserts a number challenges to the court's rulings, including the court's (1) refusal to allocate to Cremoux an ownership interest in the property of greater than 50 percent, (2) failure to reimburse Cremoux for her initial investment in the property and expenditures related to it that she made prior to April 2010, (3) failure to grant Cremoux credits for her contributions to the property from 2013 to its sale, and (4) application of ouster principles to provide for a credit in favor of Colmet-Daage that was in excess of the amount to which he was entitled.[1] Finding that the court did not abuse its discretion, we will affirm the judgment.

---

[1] Cremoux does not challenge the court's order of partition through a sale of the property. She also does not contest the court's denial of the claims asserted in her cross-complaint, including the denial of her request for cancellation of the April 2010 grant deed conveying to Colmet-Daage a joint tenancy interest in the property.

2

# I. PROCEDURAL BACKGROUND

## A. Pleadings

On January 16, 2015, Colmet-Daage filed a verified complaint against Cremoux[2] seeking to quiet title to the property, declaratory relief, and a partition by sale. He alleged that he was a co-owner with Cremoux of the property as a result of Cremoux's execution and recordation of a grant deed on April 30, 2010, conveying the property to Cremoux and Colmet-Daage as joint tenants. Thereafter, on October 23, 2013, Cremoux executed and recorded a grant deed severing the joint tenancy with Colmet-Daage, thereby resulting in the parties' co-ownership as tenants in common.

Colmet-Daage alleged that there was an actual controversy in that he was not in possession of the property, while Cremoux was in possession and was collecting rent which she was not sharing with him, and that he contended he had a right to possession. He alleged further that, through his attorney, on August 6, 2014, he had made written demand for concurrent possession of the property, and that Cremoux had refused to comply with that demand, thereby resulting in an ouster. Colmet-Daage contended that the court should order a partition sale of the property and that the proceeds be divided in accordance with the parties' respective interests because a sale and division was more equitable than a division of the property.

Colmet-Daage sought in the prayer of the complaint (1) a judicial declaration that he had a tenancy in common interest with Cremoux in the property, which allowed for concurrent possession of the property, (2) for judgment quieting Colmet-Daage's title in the property, (3) one-half of the rents received by Cremoux, (4) damages due to

---

[2] The complaint also named Washington Mutual Bank/Chase Bank, Citibank West, and HSBC Bank USA as defendants, alleging that each had at some time claimed an interest in the property unknown to Colmet-Daage.

Cremoux's ouster of Colmet-Daage, (5) sale of the property, and (6) division of the proceeds from such sale.

Cremoux cross-complained against Colmet-Daage.[3] She asserted claims for cancellation of deed, to quiet title, fraud, and conversion. Cremoux alleged that in or about 2010, while the two were in a relationship together, "Colmet-Daage began a scheme to induce Cremoux to grant him an interest in all of her real and personal property without paying her any consideration for those interests." She alleged that at that time, Colmet-Daage induced her to execute a deed without consideration transferring a joint tenancy interest in the property to him; she alleged that Colmet-Daage told her that doing so would "protect it for her family and prevent it from simply transferring to her husband[,] who [had] left the country[,] if she died." Cremoux therefore sought relief in the form of cancellation of the grant deed, and a judicial decree quieting title declaring Colmet-Daage had no interest in the property.

## B.     Trial Proceedings May 17, 2016

The first phase of the trial, commencing on May 17, 2016, addressed the issues in Cremoux's cross-complaint, including her undue influence claim challenging the validity of the April 30, 2010 joint tenancy grant deed. After hearing evidence and argument, the court announced its decision from the bench. The court found no evidence of undue influence, denied Cremoux's request for cancellation of the grant deed, ordered partition of the property, and set the case for further proceedings.[4]

---

[3] The cross-complaint also named HSBC Bank USA, and JP Morgan Chase Bank as cross-defendants, alleging that HSBC Bank USA held a deed of trust encumbering the property.

[4] During the first phase of the trial proceedings, Cremoux dismissed a claim in the cross-complaint for fraud, and a claim for conversion (as to various personal property).

4

## C. Trial Proceedings August 22, 2016—Statement of Decision

The court heard evidence from the parties on August 22, 2016, concerning Cremoux's claim for reimbursements and credits relative to the property and concerning Colmet-Daage's claim for a credit for the fair rental value of the property from the date of his ouster. The court set a briefing schedule and ordered that the matter would be deemed submitted on September 2, 2016. On November 22, 2016, the court issued its tentative decision, which became by operation of law its Statement of Decision.[5]

In its Statement of Decision, the court concluded that the grant deed executed and recorded by Cremoux on April 30, 2010, created a joint tenancy in which she and Colmet-Daage each held a joint interest in equal shares in the property. The court found that Cremoux's execution and recordation of the declaration of severance of the joint tenancy in October 2013 extinguished the right of survivorship and converted the parties' ownership to a tenancy in common relationship but did not impact their equal-share status. The court declined to exercise its equitable powers as requested by Cremoux to find that Cremoux owned a greater interest than Colmet-Daage in the property, and it declined to order that Colmet-Daage reimburse Cremoux for her contributions toward the original acquisition of the property.

The court also concluded that there had been an ouster in that Cremoux had excluded her cotenant, Colmet-Daage, from possession of the property in September 2013, thereby entitling Colmet-Daage to recover one-half of the $2,200 monthly rental value of the property from that date to the date of the trial in August 2016. The court also concluded that Cremoux, as the cotenant who paid the mortgage and insurance after the

---

[5] The court recited that the tentative decision would become the court's statement of decision unless a party specified the principal controverted issues as to which he or she sought a statement of decision and prepared a proposed statement of decision and judgment. (See Cal. Rules of Court, rule 3.1590(c).) The judgment entered in April 2017, which was approved as to form by both counsel, recites that neither party objected to the tentative decision or requested a statement of decision.

5

parties separated in 2013, was entitled to reimbursement of one-half of those expenses, which equaled one-half of the fair rental value. Thus, neither party owed the other any compensation or credit for such matters.

In its Statement of Decision, the court concluded further that Cremoux had not established that the repairs and improvements of the property for which she claimed reimbursement enhanced the value of the property. It found that the expenditures were for ordinary repairs and maintenance of the property for a period in which Cremoux was the sole cotenant (as a result of her ouster of Colmet-Daage), and thus declined to grant her request for reimbursement.

Finally, the court concluded that during their co-ownership of the property, there were times when Cremoux or Colmet-Daage, by herself or himself, had paid the property taxes. It found that Cremoux had paid an amount of $28,890.08 more than the amount of property taxes separately paid by Colmet-Daage, and that she was therefore entitled to a credit of $14,445.04 from Colmet-Daage's portion of the sales proceeds of the property.

### D.    Post-Trial Proceedings and Judgment

After the court issued its Statement of Decision, and while the property was in the process of being sold, Cremoux filed a motion in March 2017 to receive credit for contributions she had made to the property after the August 2016 proceedings. She claimed that since July 1, 2016, she had expended funds for mortgage, insurance, utilities, and to maintain and improve the property. Cremoux sought a $200,000 credit from the sales proceeds, which reflected the increase in value of the property resulting from repairs and improvements she had made to the property.

The court heard argument on the motion on April 6, 2017. The court concluded that Cremoux did not establish that the expenditures she claimed to have made to improve the property had enhanced its value, and the court denied the motion.

Judgment was entered on April 25, 2017. It provided, inter alia, that the parties were owners as tenants in common of the property, each holding an undivided 50 percent

6

interest therein. The court found that sale of the property was more equitable than division of the property in kind and the parties had agreed to such sale through licensed real estate brokers. The court ordered further that from the sale of the property, the proceeds would be applied to pay the expenses of the sale, then pay the lenders holding deeds of trust secured by the property, then pay Cremoux $14,445.04 as reimbursement for property taxes, and the residue would then be paid in equal shares to Colmet-Daage and Cremoux. It was stated further in the judgment that Cremoux was entitled to no relief on her cross-complaint.

Cremoux filed a timely notice of appeal from the judgment. (See *Schwartz v. Shapiro* (1964) 229 Cal.App.2d 238, 242, fn. 1 [interlocutory judgment or decree of partition appealable].)

## II.    DISCUSSION

### A.    Applicable Law

Under section 872.210 of the Code of Civil Procedure,[6] a co-owner of real or personal property may bring an action for partition. It is an equitable proceeding governed by principles of equity. (*American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1013) " 'The primary purpose of a partition suit is . . . to partition the property, that is, to sever the unity of possession. [Citations.]' [Citation.] 'Partition is a remedy much favored by the law. The original purpose of partition was to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land. An additional reason to favor partition is the policy of facilitating transmission of title, thereby avoiding unreasonable restraints on the use and enjoyment of property.' [Citation.]" (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493 (*LEG Investments*).) A co-owner of property, absent express or implied waiver, has an absolute right to partition. (§ 872.710, subd. (b).)

---

[6] Further unspecified statutory references are to the Code of Civil Procedure.

7

Under section 872.210, the court may, as an alternative to effecting a division of the property between the parties, "order the property be sold and the proceeds divided among the parties in accordance with their interests in the property if the parties agree to such relief or the court determines sale and division of the proceeds would be more equitable than a division of the property. [Citation.]" (*LEG Investments, supra*, at p. 493.)[7] Although the law favors division in kind of commonly owned property, " ' "[i]n many modern transactions, sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical . . . ." ' [Citation.]" (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597 (*Cummings*).)

Every partition action includes a final accounting, including credits and debits to each cotenant, that is governed by principles of equity. (*Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035.) The credits may "include expenditures in excess of the cotenant's fractional share for necessary repairs, improvements that enhance the value of the property, taxes, payments of principal and interest on mortgages, and other liens, insurance for the common benefit, and protection and preservation of title. [Citations.]" (*Id.* at pp. 1035-1036.) "The question of the respective rights of tenants in common in partition suits, to the benefit of the enhanced value of land on account of improvements, and of the right to offset the same by rents and profits derived, depends upon the facts of a particular case. It involves the questions of good faith, consent of parties, nature of the improvements, the source and amount of rents and profits, and [other] elements." (*Buttram v. Finley* (1946) 73 Cal.App.2d 536, 544.)

---

[7] The court may employ a third option—not at issue here—of partition by appraisal "[w]hen the interests of all parties are undisputed or have been adjudicated" (§ 873.910) and the parties agree to the approach. (§ 873.910 et seq.)

"[T]he ordering of an accounting under the partition statute falls under the wide range of discretion accorded a court in equity." (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 542 (*Finney*).) Because an action for partition is an equitable proceeding, it is governed by the principle that "[a] court of equity has broad powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure." (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 766 (*Richmond*).)

## B. Standard of Review

"The standard of review for an interlocutory judgment of partition is abuse of discretion. [Citations.] Under that standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." [Citation.]' [Citation.] '[A] disposition that rests on an error of law [also] constitutes an abuse of discretion. [Citation.]' [Citation.]" (*Cummings*, *supra*, 13 Cal.App.5th at p. 597.)

The matter of whether an ouster of a cotenant has occurred is a question of law which is reviewed de novo. (*Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1612.) But we defer to the trial court regarding its factual findings in support of the question of ouster where the facts are disputed. (*Ibid.*)

## C. Allocation of Ownership Interests

Cremoux contends in her appellate brief[8] that the trial court erred by failing to allocate to her a greater than 50 percent ownership interest of the property after considering the parties' respective contributions. Cremoux contends that she purchased the property with no contribution from Colmet-Daage, and that over the years, her contributions to the property "far exceeded the limited contribution Colmet-Daage provided after he acquired his interest as co-owner." She argues that, had the court considered "the vast disparity" of the parties' respective contributions to the property, it

---

[8] Cremoux filed an opening brief but elected not to file a reply brief.

should have found that Cremoux had at least a 96 percent interest and that Colmet-Daage had at most a four percent interest in the property.

Initially, we observe that Cremoux's arguments to the effect that there was a "vast disparity" between the parties' respective contributions to the property and that Cremoux's interest in the property was at least 96 percent are unsupported by proper citations to the record. She does not identify where in the trial record it was supposedly established that there was a "vast disparity" in the parties' contributions, nor does she cite to evidence supporting her claim to a 96 percent property interest. The failure to provide proper citations to the appellate record—either the clerk's or reporter's transcript— supporting matters referred to in the court below violates court rules. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [matters referenced from the record in appellate briefs must be supported "by a citation to the volume and page number of the record where the matter appears"].) " 'Any statement in a brief concerning matters in the appellate record— whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record*.' [Citation.]" (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970, original italics.) The appellate court may disregard any contentions made without citation to the record supporting them. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 (*City of Lincoln*); see also *In re S.C.* (2006) 138 Cal.App.4th 396, 406 [appellate court is not required to search the record to discover support for litigant's position].) We will nonetheless address Cremoux's unsupported argument.

"Joint tenancy is a joint interest owned by two or more persons in equal shares. [Citation.]" (*Cole v. Cole* (1956) 139 Cal.App.2d 691, 695 (*Cole*), citing Civ. Code, § 683.) Further, where, as here, the deed reflects joint tenancy interests, there is "a prima facie case that the property is actually *owned* in joint tenancy. There is a presumption that ownership is as stated in the deed and the burden is upon the party who seeks to rebut the presumption. [Citations.]" (*Weak v. Weak* (1962) 202 Cal.App.2d 632, 638.) "The

10

principal characteristic of joint tenancy is the right of survivorship." (*Estate of Propst* (1990) 50 Cal.3d 448, 455.)

One joint tenant has "[a]n indisputable right" to sever the joint tenancy. (*Riddle v. Harmon* (1980) 102 Cal.App.3d 524, 527.) Civil Code section 683.2 provides various specific methods of severance of a joint tenancy, which constitute "a nonexclusive list." (*Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 434.). One method is the recordation of a declaration of severance. (Civ. Code, § 683.2, subd. (a)(2).) A severance of the joint tenancy extinguishes the right of survivorship and transforms the joint tenancy into a tenancy in common. (*Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1385; see also *Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 630 [except for joint tenancy's right of survivorship, "the rights of tenants in common and joint tenants with respect to property are the same"].) "Because a tenant in common also has an undivided fractional interest in the property [citation], the unilateral severance of the joint tenancy by a joint tenant does not deprive other joint tenants of their fractional shares. [Citation.]" (*Estate of Propst*, *supra*, 50 Cal.3d at pp. 455-456.)

The trial court properly applied these legal principles here. In its Statement of Decision, the court began its analysis with the April 30, 2010 grant deed in which Cremoux conveyed a joint tenancy interest in the property to Colmet-Daage and herself. Relying on *Cole*, *supra*, 139 Cal.App.2d at page 695 and Civil Code section 683, the court concluded that the parties owned equal shares of the property as of the date of the grant deed. Cremoux testified that she wrote by hand and signed the following statement on the grant deed: "I declare under penalty of perjury that the loans and encumbrance exceed the current fair market value." In the first phase of the trial, the court placed "great significance" on the fact that when Cremoux signed the grant deed, there was no equity in the property. The court concluded that when the grant deed was signed in 2010, "Colmet-Daage was actually taking on a debt rather than an asset." The trial court found that Cremoux's execution and recordation of the October 2013 declaration of severance

resulted in extinguishing the right of survivorship but the parties continued to own equal shares of the property as tenants in common." (See *Estate of Propst*, *supra*, 50 Cal.3d at pp. 455-456; *Estate of Mitchell*, *supra*, 76 Cal.App.4th at p. 1385.)

The trial court declined Cremoux's request that it find, as a court of equity, that Cremoux had a greater than 50 percent interest in the property. In so holding, the court—drawing in part upon the evidence presented at the first phase of the trial and the court's conclusions thereon—concluded that (1) there was no discussion between the parties in April 2010 regarding the respective percentage of ownership interests they would hold; (2) Cremoux never expressed to Colmet-Daage her intention to retain a greater than equal interest; (3) at the time of the grant deed, "the loans and encumbrances on the property exceeded [its] fair market value"; (4) Cremoux never expressed a wish or expectation to be reimbursed for funds she spent to originally acquire the property; (5) Cremoux sought advice from an accountant and a real estate agent and, notwithstanding that guidance, executed the grant deed without expressing an intention that the parties' ownership interests would be anything other than presumptive equal interests; (6) Cremoux executed the grant deed without undue influence; (7) the parties "were involved in a loving relationship, blending their families"; (8) Colmet-Daage used his own funds to pay the daily living expenses for Cremoux and her children, including her daughter's college tuition;[9] (9) Colmet-Daage paid the property taxes and other expenses for the property both before and after execution of the grant deed; and (10) "it was probable that [Colmet-Daage] would have cared for and raised [Cremoux's] children if anything had happened to [Cremoux] during their relationship."[10] The trial court therefore not only applied its

---

[9] There was testimony from Colmet-Daage at the first phase of the trial that from approximately June 2009 to January 2013, he had expended approximately $450,000 of his funds in the relationship.

[10] In the first phase of the trial, the trial court, in concluding that the joint tenancy deed was not procured through undue influence, found that "Mr. Colmet-Daage treated Ms. Cremoux and her children as if he was married to her and as if her children were his

12

broad equitable powers in deciding Cremoux's claim of unequal ownership interest; it provided a substantial record of its reasons for declining that claim.

Cremoux relies on *Cosler v. Norwood* (1950) 97 Cal.App.2d 665 (*Cosler*) in support of her position that the court erred in failing to award her a greater than equal interest in the property. The parties there, taking title as joint tenants, purchased certain property for $27,000 with the understanding they would contribute equally to the purchase price. (*Id.* at p. 666.) The plaintiff contributed only one quarter of the purchase price, and the defendant paid the balance. (*Ibid.*) The court found that the plaintiff and the defendant owned one-fourth and three-fourth interests in the property, respectively. (*Ibid.*) The appellate court affirmed, rejecting the plaintiff's argument that the defendant was estopped from asserting a greater than one-half interest because the parties took title as joint tenants. (*Ibid.*) The court concluded that the plaintiff, "by seeking a partition and an accounting put in issue the interest of each of the parties to the real property in question. Therefore the deed of joint tenancy was only one item of evidence to be considered by the court in connection with other probative facts produced by plaintiff and defendant." (*Ibid.*)

*Cosler* is distinguishable and does not support Cremoux's claim. Here, there was no evidence that the parties on April 30, 2010, made unequal contributions to acquire the property jointly. Rather, the evidence was that the property had no equity at the time, neither party contributed funds at the time, and, as found by the court, at the time,

own before and after she executed the April 2010 joint tenancy deed. [¶] First, he agreed to find and did find a home in Los Altos large enough to accommodate all seven of their children so that Ms. Cremoux's eldest daughter Julie could continue to attend Los Altos High School and so that her education was not disrupted. This was at a cost of $6000 per month for rent alone, a tremendous monthly expense. [¶] The family often had to use money from Mr. Colmet-Daage's personal savings account to cover the family's monthly expenses. Also, he paid for Ms. Cremoux's eldest daughter's college tuition with his credit card, even though she did not think of him as her stepfather or think highly of him. These are not the actions of a man who was only looking out for his own advantage."

13

"Colmet-Daage was actually taking on a debt rather than an asset." While *Cosler* stands for the proposition that, in a particular case, the court in considering all the evidence may conclude that parties purportedly holding property as joint tenants have unequal ownership shares, that case does not compel or even suggest such a conclusion should have been reached here by the trial court.

Cremoux also relies on *Kershman v. Kershman* (1961) 192 Cal.App.2d 24 (*Kershman*). In *Kershman*, the parties purchased property while they were married and held title as joint tenants, with the plaintiff contributing $8,014 from her separate funds and the defendant contributing $1,000 from a bank account held in his name containing a portion of his earnings. (*Id.* at p. 25.) The trial court determined that the plaintiff and the defendant held 93.3 percent and 6.7 percent interests in the property, respectively. (*Id.* at p. 26.) The defendant challenged this finding, arguing that the trial court was required to order an equal division of the proceeds from the partition sale of the property based upon the joint tenancy deed. (*Ibid.*) Relying on *Cosler*, *supra*, 97 Cal.App.2d 665, the appellate court disagreed, concluding that the record contained sufficient evidence that, the joint tenancy deed notwithstanding, the parties had agreed to unequal ownership interests. (*Kershman*, *supra*, at pp. 26-27.)[11]

*Kershman* does not support Cremoux's claim of error. The *Kershman* court's conclusion that sufficient evidence supported the trial court's finding that the parties had unequal property interests has no bearing on whether the court erred here by concluding that the parties owned the property equally, and that the evidence did not support the unequal ownership that was claimed by Cremoux. The trial court here provided ample

_____

[11] Although not relevant to Cremoux's claim of error here, the appellate court in *Kershman* ultimately reversed the judgment, concluding that while the trial court's finding that the parties agreed to unequal ownership of the property was supportable, its conclusion that the respective interests were 93.3 percent and 6.7 percent was not supportable. (*Kershman*, *supra*, 192 Cal.App.2d at pp. 27-30.)

14

justification—including the joint tenancy grant deed, the conversion to tenancy in common interests, and the absence of evidence that the parties intended anything other than equal ownership—to conclude that the parties at all times after April 30, 2010, retained equal ownership interests in the property.

Lastly, Cremoux takes issue with the trial court's statement that "[Cremoux] meant to, and did, gift an equal share of the property to [Colmet-Daage] as a joint tenant with a right of survivorship." She argues that there was no substantial evidence to support this conclusion and it was contrary to the evidence at trial. Irrespective of whether there was evidentiary support for this statement, it is axiomatic that, "[a]s an appellate court, we generally review the trial court's ruling, not the reasons it gave for that ruling. [Citations.]" (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 870.) As discussed, *ante*, there were ample reasons supporting the trial court's exercise of discretion in denying Cremoux's request that she be found to be the equitable owner of more than a 50 percent interest in the property. The court did not err.

### D.     Reimbursement—Initial Investment and Expenditures

As an alternative to her argument that the trial court should have adjusted her percentage interest in the property, Cremoux contends that she should have received "an accounting and compensatory adjustments for her investment and expenditures in the [p]roperty" made before April 2010. She contends that it was undisputed that she had contributed a cash down payment of $133,000 in 2002 for the purchase price and had paid expenses on the property (loan, tax, insurance) before April 2010. And, Cremoux contends, there was no dispute the property had appreciated in value by at least $235,000 from 2002-2010. She asserts that the court should have therefore done equity by

15

allocating the amount of $235,000 in her favor from the sales proceeds before dividing the remaining net proceeds between the parties.[12]

There were substantial grounds upon which the trial court declined to exercise its equitable powers to credit to Cremoux the pre-2010 appreciation in value of the property. Most of the court's reasons for denying Cremoux's alternative request for a determination that she owned a greater interest in the property apply here: (1) the parties did not discuss their respective percentage of ownership interests; (2) Cremoux never expressed an intention to retain a greater than equal interest; (3) at the time of the grant deed, the loans and encumbrances against the property exceeded its fair market value; (4) Cremoux never stated that she expected to be reimbursed for funds she spent to acquire the property; (5) Colmet-Daage used his own funds to pay the daily living expenses for Cremoux and her children; and (6) Colmet-Daage paid the property taxes and other expenses for the property both before and after execution of the grant deed.

Cremoux makes much of the fact that the evidence was undisputed that the property—between its purchase in 2002 for $655,000 with a down payment of $133,000 and April 30, 2010—had appreciated in value by $235,000 to $900,000.[13] But as noted— and as declared under penalty of perjury by Cremoux in the grant deed—as of April 30, 2010, the debts against the property exceeded $900,000. By April 2010, Cremoux had

---

[12] Cremoux also argues that she should receive "compensatory adjustments to reflect [her] down payment . . . and loan, insurance and tax payments between her purchase in 2002 and April 30, 2010." Although her argument is somewhat ambiguous, we understand her position to be that the court should have allocated to her $235,000 from the sales proceeds as a means of addressing her contributions (in an unspecified amount) to the property that preceded execution and recordation of the joint tenancy grant deed in April 2010.

[13] In her appellate brief, Cremoux does not mention that she wrote by hand under penalty of perjury on the April 30, 2010 grant deed that the debt against the property exceeded its fair market value, and that the court found in its Statement of Decision that the debt exceeded the property's value.

thus received (through the loan proceeds on the line of credit) the funds back from her down payment and the appreciation in value of the property. This circumstance prompted the trial court in the first phase of the trial to observe that when the grant deed was signed in 2010, "Colmet-Daage was actually taking on a debt rather than an asset."[14] Therefore, notwithstanding Cremoux's insistence that the trial court should have done equity by reimbursing her $235,000 (i.e., the appreciation in value as of April 2010) from the sales proceeds, the court's having done so would have effectively resulted in Colmet-Daage acquiring a one-half interest in the debt-ridden property for $235,000.

Cremoux argues that the trial court in its Statement of Decision improperly relied on *Milian v. DeLeon* (1986) 181 Cal.App.3d 1185 (*Milian*) in rejecting her claim for reimbursement of the appreciation in value of the property. There, the plaintiff and the defendant, while they were together in a romantic relationship, purchased real property by a joint tenancy grant deed. (*Id.* at p. 1189.) In the partition action that followed the end of the parties' relationship, the trial court ordered partition of the property by sale with the proceeds divided equally between the parties without an accounting. (*Id.* at p. 1192.) The trial court found "that in purchasing the property the parties intended [to create] and created a true joint tenancy." (*Id.* at p. 1194.) The plaintiff, who contributed most of the down payment (*id.* at p. 1190), challenged the decision on the grounds, inter alia, that the trial court had failed to provide for an accounting and reimbursement of the parties' respective contributions to the property (*id.* at p. 1194).

The appellate court rejected the challenge, finding that there was substantial evidence supporting the trial "court's finding that the parties agreed to own and divide the property equally irrespective of the exact dollar amounts each contributed to the acquisition, improvement, maintenance and preservation of the property." (*Milian*,

---

[14] The court stated further that "[t]he reality is that [Colmet-Daage] invested three additional years after the execution of the deed in a relationship at considerable expense and responsibility for an uncertain gain in the real estate market."

17

*supra*, 181 Cal.App.3d at p. 1196.)  The *Milian* court noted that it was aware of no cases "in which a true joint tenancy was found and yet an accounting and contribution was ordered because of disproportionate contributions by the parties to the original purchase price." (*Id.* at p. 1195.)  It explained that "once the court in a partition action has determined that a true joint tenancy exists, it may not order reimbursement or contribution on account of differences in the amounts the parties have paid toward the initial acquisition of the property.  Of course, if one joint tenant has advanced funds on behalf of the other *and there is an agreement between them for reimbursement* in the event of sale of the property, that agreement can be enforced by the court.  [Citation.] However, by definition[,] joint tenancy ownership means equal ownership (see Civ. Code, § 683), and in the absence of an agreement for reimbursement we are unaware of any authority which authorizes reimbursement on account of unequal contributions to the down payment." (*Ibid.*, italics added, fns. omitted.)

The trial court below, reciting the *Milian* passage last-quoted above, reasoned that because there was no evidence the parties here agreed that Colmet-Daage would reimburse Cremoux for the contribution she and her husband had made for the down payment to acquire the property, there was no authority for the court to authorize such reimbursement to Cremoux.  She contends it was error for the trial court to have applied *Milian* because in the present case, there was "no 'true joint tenancy,' " in that the parties were tenants in common at the time of the partition action, and the parties did not purchase the property together in 2002.

Cremoux's position is without merit.  The court found, based upon the evidence, that the presumption of joint tenancy under Civil Code section 683 created by the April 30, 2010 grant deed had not been rebutted.  The court properly looked at the ownership circumstances as of April 2010 to find that there was a joint tenancy between the parties creating equal interests in the property.  Because the parties' equal ownership interests did not change in October 2013 with the severance of the joint tenancy and the

18

transformation of the parties' relationship to that of tenants in common (see *Estate of Propst*, *supra*, 50 Cal.3d at pp. 455-456)—as the trial court so found—it is of no consequence that at the time the partition action was filed, the parties' status as joint tenants no longer existed. Cremoux also argues that *Milian* supports her position, insofar as the court, citing *Kershman*, *supra*, 192 Cal.App.2d 24 and *Cosler*, *supra*, 97 Cal.App.2d 665, held that "because in a suit for partition all parties' interests in the property may be put in issue regardless of the record title [citations], and the court may consider the fact the parties have contributed different amounts to the purchase price in determining whether a true joint tenancy was intended [citations]." (*Milian*, *supra*, 181 Cal.App.3d at pp. 1195-1196.) But as we have discussed*, ante*, the court here *did* find— and it was not compelled under *Kershman* or *Cosler* to reach a contrary conclusion even though Cremoux initially acquired the property without Colmet-Daage's involvement— that the grant deed created a true joint tenancy between the parties.

Finally, Cremoux argues that the court should have used the "*Moore-Marsden* formula developed in family law" to effect "an equitable allocation of the residual proceeds from [the] partition sale." Under the "*Moore/Marsden* rule,"[15] "[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property. [Citations.] . . . The *Moore/Marsden* rule has been extended to cases involving separate commercial property. [Citation.] It has also been applied where the parties refinanced a separate residential mortgage during marriage. [Citation.]" (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421-1422.)

After acknowledging that the present case "is not based in family law," Cremoux makes the one-sentence argument: "Even though Cremoux and Colmet-Daage were not,

---

[15] See *In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372; *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 436-440.

and could not, be married during the period of co-ownership, their respective investments in the [p]roperty are akin to a spouse bringing separate property into a marriage." This conclusory argument, devoid of legal authority in support of the proposition that the *Moore/Marsden* rule should be applied outside of the family law context, is inadequate to bring the issue before this court. (See *Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1018 (*Nisei Farmers*) [arguments in briefs raised in perfunctory fashion will be deemed by the appellate court to be abandoned]; *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284 [failure to cite legal authority for position in appellate brief "amounts to an abandonment of the issue"].)

### E.     Reimbursement—Repairs and Improvements (2013-2017)

Cremoux contends that the court erred in failing to provide a compensatory adjustment for expenditures made by her after January 31, 2013, to maintain, preserve and enhance the value of the property. These expenditures fall into two categories: (1) expenditures made between February 1, 2013, and the second phase of the trial in August 2016, which were addressed by the court in its statement of decision of November 22, 2016 (hereafter, the pretrial expenditures); and (2) expenditures made after the second phase of trial between August 2016 and March 2017, which were addressed in Cremoux's posttrial motion that was heard on April 6, 2017 (hereafter, the posttrial expenditures). These two categories of expenditures are discussed separately below.

#### 1.     *Pretrial Expenditures (February 2013 to August 2016)*

Cremoux argues that she made substantial pretrial expenditures that constituted repairs and improvements to the property that totaled $173,439.[16] She also contends that

---

[16] In her appellate brief, Cremoux states that the total pretrial expenditures of $173,439 "include[d] post-trial, pre-sale improvements and repairs totaling $40,862.16." We are uncertain whether this figure of $40,862.16 is part of the total amount of posttrial repair expenditures of $43,505 identified in Cremoux's motion for posttrial expenditures

she made all loan, tax, insurance, and utility payments relative to the property after January 31, 2013. Cremoux acknowledges that the trial court credited her for one-half of the loan and insurance expenditures. The court offset against those expenditures a credit in favor of Colmet-Daage for one-half of the fair rental value of the property for the same period, based upon a finding that there had been an ouster. Cremoux challenges the amount the court credited Colmet-Daage for the property's fair rental value during the period of ouster. (This offset issue is addressed in section II.F., *post*.)[17]

As a general rule, in a partition action, "a court of equity is required to take into account the improvements which another cotenant, at his [or her] own cost in good faith, placed on the property *which enhanced its value* and to award such cost to him [or her]. [Citation.]" (*Mercola v. Chester* (1950) 97 Cal.App.2d 140, 143, italics added (*Mercola*).) Here, however, the trial court found that "[Cremoux] failed to provide any evidence that any of the alleged repairs or maintenance enhanced the value of the [p]roperty."

In her appellate brief, Cremoux points to no evidence that she presented that tied any pretrial expenditures she made for work on the property to an enhancement of its value. Instead, Cremoux, without elaboration, argues conclusorily: "The trial court decided none of the expenditures made since 2013 added value to the [p]roperty. This finding cannot be supported on the substantial expenditures made by Cremoux between January 2013 and mid-2016 in maintaining and preserving the [p]roperty." We need not

_____

discussed, *post*. If so, it would appear that Cremoux claimed improvements and repairs of $40,862.16 at both the second phase of the trial, and (indirectly by arguing them as the basis for awarding a credit of $200,000 for the enhancement of the value of the property upon sale) in the posttrial motion. Because we conclude that the trial court did not err in denying Cremoux's claims related to expenditures made for work on the property from 2013 (both pretrial and posttrial), it is unnecessary for us to resolve this discrepancy here.

[17] Cremoux acknowledges that the trial court provided her a credit for the amount of property tax expenditures she made that exceeded those made by Colmet-Daage. Cremoux does not challenge this issue on appeal.

consider this conclusory and undeveloped argument. (See *Nisei Farmers*, *supra*, 30 Cal.App.5th at p. 1018 [perfunctory appellate arguments deemed abandoned]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) ["conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the argument is considered abandoned].) Even were we to address the unsupported contention, we would conclude the trial court did not err in finding that Cremoux had failed to meet her burden of establishing that the expenditures she claimed she made for work on the property enhanced its value.

The trial court acknowledged that Cremoux had "submitted numerous invoices, receipts, and estimates for alleged repairs and improvements to the [p]roperty for which she request[ed] reimbursement. . . . However, some of the receipts were mere estimates with no proof of payment and [Cremoux] admitted that some 'improvements' were not required by applicable building codes. Moreover, [Cremoux] failed to provide any evidence that any of the alleged repairs or maintenance enhanced the value of the [p]roperty. In addition, the expenditures appear to be for items which enhanced the use and enjoyment of the [p]roperty by [Cremoux] and her family while they solely occupied the [p]roperty to the exclusion of [Colmet-Daage]." The court accordingly found "that the expenditures were only for the ordinary type of repairs for maintenance and preservation of the property while Cremoux was the sole [occupying] cotenant and the court will decline to order reimbursement to [Cremoux]."[18]

It is thus clear that the trial court concluded that Cremoux had failed to meet her evidentiary burden to justify reimbursement of her claimed expenses. This finding was based upon her failure to prove that the repairs allegedly made at her expense actually

---

[18] Cremoux in her appellate brief omits any reference to the trial court's reasons in the Statement of Decision for denying the request for reimbursement of expenses, including the court's conclusion that there was a lack of proof that the alleged repairs enhanced the value of the property.

22

enhanced the value of the property. This finding also appears to have been based on the court's concern as to whether at least some of the expenses claimed had actually been incurred. The court's conclusion was founded upon its weighing of the evidence, and its assessment of the credibility of the witnesses, particularly Cremoux's credibility. We defer to the trial court on such matters, as it is axiomatic that an appellate court "has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.)

Cremoux argues that the court's finding that "the expenditures made since 2013 [did not add] value to the [p]roperty . . . cannot be supported [by the evidence of] the substantial expenditures made by Cremoux between January 2013 and mid-2016." In making this argument, including her assertion that "Colmet-Daage offered no contradictory evidence," Cremoux appears to suggest that we review for substantial evidence the court's decision to deny her request for a credit for the pretrial expenditures. She is mistaken. When it is clear, as is the case here, that the trial court's decision was based upon it having " 'expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations]. [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' [Citation.]" (*Sonic Manufacturing Technologies,*

23

*Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466, italics added (*Sonic Manufacturing*).) Viewing the trial court's rejection of Cremoux's claim of entitlement to reimbursement of expenses allegedly made to improve the property from the proper lens of a failure of proof, the court did not err, because Cremoux's evidence did not " 'compel[] a finding in favor of [Cremoux] favor as a matter of law.' " (*Sonic Manufacturing*, *supra*, at p. 466.)

Cremoux argues further that the trial court erred in relying on *Gerontopoulos v. Gerontopoulos* (1937) 20 Cal.App.2d 261 (*Gerontopoulos*) in denying her claim for reimbursement of expenditures for repairs and improvements. In *Gerontopoulos*, the plaintiff originally owned certain property with his brother as tenants in common; the brother's interest was later transferred to his spouse in a divorce decree. (*Id.* at p. 263.) The plaintiff brought a partition action against his ex-sister-in-law. (*Ibid.*) In her appeal from the judgment of partition declaring that the parties each held undivided one-half interests in the property as tenants in common, the defendant argued, inter alia, that the trial court erred in strictly limiting the contributions made by her ex-husband and her for improvements to the property. (*Id.* at p. 265.) The appellate court rejected the challenge, holding: "The evidence affirmatively showed that [the] plaintiff did contribute his share of some of the alleged expenditures. It further appeared that most of the alleged expenditures were for the ordinary type of repairs and improvements and that they were made after [the] plaintiff had ceased to occupy the premises. These expenditures were apparently made primarily for the benefit of [the] defendant and her husband, who actually occupied the premises as their home and who paid no compensation to [the] plaintiff therefor from 1927 until the date of trial. Under these circumstances, it does not appear that the trial court erred in limiting plaintiff's contribution to the amount specified. [Citation.]" (*Ibid.*)

Cremoux argues that *Gerontopoulos* is distinguishable because here, Colmet-Daage did not contribute to any of the expenditures made by Cremoux to repair or

24

improve the property, and the trial court here *did* compensate Colmet-Daage for Cremoux's use of the property. She argues, therefore, *Gerontopoulos* did not provide "a basis to outright deny" reimbursement for Cremoux's expenditures to improve and repair the property. Cremoux's position lacks merit.

While it is true that the plaintiff in *Gerontopoulos* made *some* contribution to expenditures made for repairs, a court of equity, as held in that case, may deny a cotenant compensation for repair expenditures made while he or she occupied the property to the exclusion of the cotenant and which expenditures were made primarily for the occupying cotenant's benefit. (*Gerontopoulos*, *supra*, 20 Cal.App.2d at p. 265; see also 4 Miller & Starr, Cal. Real Estate (4th ed.2020) § 11:19, pp. 11-52 to 11-53 (4 Miller & Starr): "When one cotenant has made expenditures that were only for the ordinary type of repairs for maintenance and preservation of the property, and the property was occupied solely by the cotenant making the expenditures, the court may refuse to reimburse that cotenant.") The court, exercising its broad equitable powers, elected to deny Cremoux's request for an accounting and reimbursement for pretrial expenditures she claimed that she had made for repairs to the property. There was no abuse of discretion. (See *Finney*, *supra*, 111 Cal.App.4th at p. 542 [accounting ordered in partition action "falls under the wide range of discretion accorded a court in equity"].)

### 2. *Posttrial Expenditures (August 2016-March 2017)*

Cremoux argues that she made substantial posttrial expenditures for repairs and improvements totaling $43,505 that enhanced the value of the property.[19] She contends that they were improvements and repairs requested by Colmet-Daage's real estate agent in conjunction with the anticipated sale of the property, and that Colmet-Daage made no financial contribution to this work. Cremoux contends that the trial court's failure to make "compensatory adjustments" to account for her contributions was "prejudicial

---

[19] See footnote 16, *ante*.

25

error." Although Cremoux does not specifically identify *what* "compensatory adjustments" the trial court erroneously failed to make, we understand the adjustment would have been for a credit of $200,000—that sum representing the increase in value of the property directly resulting from Cremoux's posttrial improvements and repairs.[20]

In her posttrial motion, Cremoux requested a credit for contributions she had made to the property after the August 2016 proceedings. She claimed that since July 1, 2016, she had made mortgage, insurance, and utility payments for the property and had paid $43,505 to maintain and improve the property. Cremoux asserted that her contributions had enhanced the value of the property by at least $200,000, and she sought the benefit of this appreciation in value as a credit for her share of the proceeds from the sale of the property. In support of this contention, Cremoux submitted (1) the declaration of her real estate agent, Margery Walsh, who stated she understood that Cremoux had made certain presale improvements to the property,[21] and that based upon her experience, "these improvements added significant value to the Remington Drive [p]roperty"; and (2) the declaration of Cremoux in which she stated that there had been a February 2017 offer to buy the property for $1,528,888, the property sold for $1,725,000, and she "believe[d] the increase in the sales price of approximately $200,000 was due entirely to the improvements [she] made without any contribution." Cremoux asserted further that

---

[20] Our understanding is based upon the fact that in her written motion, Cremoux sought a $200,000 credit based upon the claimed appreciation in value of the property due to her repairs and improvements. At the hearing on the motion, her counsel reiterated the request that the court award Cremoux $200,000, representing the increase in property value from the repairs and improvements.

[21] Walsh declared that she understood this work to have included baseboard work, closing off the master bedroom, installation of heating in the back room, interior and exterior painting, repair and replacement of windows, installation of missing countertops, installation of bathroom mirrors, completion of granite work on the fireplace, refinishing the bathtub, tilework in the master bath, front yard improvements, installation of new interior door hardware, electrical work, and replacement of bathroom lights.

Colmet-Daage was not entitled to an equitable offset for the fair rental value of the property because Cremoux was no longer in exclusive possession of the property and thus the principles of ouster no longer applied. In her declaration, Cremoux stated that she had a lease for property in Mountain View, her business address was in San Jose, and that the Sunnyvale property had not been occupied since September 1, 2016.

Colmet-Daage opposed the motion. He contended that Cremoux had submitted no evidence establishing her claim that the work she performed on the property had enhanced the property's value. Colmet-Daage argued that the work Cremoux performed—which was done without his knowledge or approval, despite him having advised her in August 2016 that he did not want any work done without discussing it with him first—"did not so much 'improve' the property, as she repaired the issues she herself allowed to occur in the home while she exclusively used and possessed the property over the last three years."[22] He asserted that the increase from two initial offers, which were for $1,528,888 and $1,525,000, to the ultimate sales price of $1,725,000 was due to a particularly motivated buyer who bid well over the asking price, and then increased his offer by $50,000, effectively "over[]bid[ding] himself only 24 hours after making his initial offer." Colmet-Daage also took issue with the evidence Cremoux presented to support her claimed expenditures. Lastly, Colmet-Daage asserted that Cremoux continued to have exclusive control over the property; had delayed listing it for sale until January 2017, notwithstanding a court order that it be listed by September 6, 2016; had instructed her real estate agent that she be present whenever Colmet-Daage was at the property; had refused to give Colmet-Daage the access code to the property; had submitted utility bills as exhibits to the motion that were in excess of $200 per month,

---

[22] Colmet-Daage contended that Cremoux, a contractor herself with her own business, had "dismantled the kitchen cabinets and countertops," left other projects unfinished, hired subcontractors who negligently installed windows, and left many cosmetic issues unattended.

27

suggesting that she was still living at the property; had continued to have the property listed as her business address according to the Contractor's State License Board; and was not living in a Mountain View apartment pursuant to a lease as claimed.[23]

After hearing argument on Cremoux's motion on April 6, 2017, the trial court denied Cremoux's request for a credit for the increase in value of the property based upon her claim of posttrial repairs and improvements. In support of its ruling, the court found that Cremoux had neither given notice to, nor sought approval from, Colmet-Daage at the time she performed the work on the property. It concluded from the evidence that Cremoux had continued living in the home or had otherwise continued to use the property after the August 2016 trial; therefore, the ouster of Colmet-Daage continued posttrial.[24] And, critically, the court concluded that Cremoux had failed to make a sufficient showing that the posttrial work had resulted in an increase in value of the property. The court reasoned that Cremoux's opinion that the work enhanced the property's value was unsupported, and that the opinion of real estate agent Walsh was unsupported and "vague."

Cremoux argues on appeal that after the August 2016 trial, she "made substantial repairs and improvements to the [p]roperty." She contends further that "Colmet-Daage presented no contradictory evidence." In support of her position, she asserts that "[a] cotenant is entitled to credit for good faith improvements *that enhance the value of the property*." (Italics added, fn. omitted.)

[23] Colmet-Daage asserted that Cremoux's claim that she and her children lived in Mountain View was a sham. The apartment had one bedroom, and records showed that there were four persons who claimed to reside there. Colmet-Daage argued that Cremoux's lease arrangement was part of the "common practice of parents with school age children to 'rent' a room at an address in a particular school district to allow their children to attend better schools, in this case Los Altos Middle and High School."

[24] In concluding that Cremoux's ouster of Colmet-Daage continued to exist, the court found that "the evidence before the Court . . . [was] more credible than her, so to speak."

The appellate claim must be rejected for reasons parallel to those discussed above concerning Cremoux's claim for reimbursement of pretrial expenditures. The trial court concluded that the evidence did not establish that the posttrial expenditures by Cremoux for work done on the property had enhanced its value. That being the case, the court, in equity, was not required to credit any improvements made by Cremoux to the property, because they did not enhance its value. (*Mercola*, *supra*, 97 Cal.App.2d at p. 143.)[25]

Further, to the extent Cremoux may suggest that the trial court erred in failing to credit the expenditures made for the property *even if the work had not enhanced its value*, the court properly rejected the suggestion. The trial court found based upon the evidence before it that Cremoux had neither consulted with, nor given notice to, Colmet-Daage about the repairs, she had continued to live in or use the property to Colmet-Daage's exclusion, and therefore the ouster continued after the August 2016 trial. The court, therefore, exercising its broad equitable powers (*Richmond*, *supra*, 105 Cal.App.3d at p. 766), properly refused reimbursement of expenses made by Cremoux, the sole occupying cotenant primarily for her benefit, for the maintenance and preservation of the property. (*Gerontopoulos*, *supra*, 20 Cal.App.2d at p. 265; see also 4 Miller & Starr, *supra*, § 11:19, pp. 11-52 to 11-53.)

Lastly, to the extent that Cremoux contends she was entitled to a credit for the posttrial expenditures because she *established*, without contradictory evidence, their existence and that they enhanced the value of the property, she is mistaken. The trial court concluded that Cremoux had not shown an entitlement to a $200,000 credit for the

---

[25] *Mercola* also requires that the expenditures that enhanced the value of the property to have been made "in good faith" by the cotenant. (*Mercola*, *supra*, 97 Cal.App.2d at p. 143.) Although not expressly stated, the trial court's conclusions in denying the motion, including the following statement, imply that the court found a lack of good faith on the part of Cremoux: "And her not consulting with [Colmet-Daage] as to the repairs . . . [indicates] that she's still controlling [the property] and not treating him as an equal in the repairs or anything else or his use of it."

expenditures because she had not met her burden of proving that the work performed by her enhanced the value of the property. The court did not err, because Cremoux's evidence did not " 'compel[] a finding in favor of [Cremoux] as a matter of law.' " (*Sonic Manufacturing*, *supra*, 196 Cal.App.4th at p. 466.)

### F.    Ouster

The court concluded after the second phase of trial that Cremoux had excluded her cotenant, Colmet-Daage, from the property effective September 2013. Under principles of ouster, the court found that Colmet-Daage was entitled to a credit for one-half of the fair rental value of the property from September 2013 through August 2016. The court found the fair rental value to have been $2,200 per month (representing the amount paid for mortgage and insurance). The court also concluded that Cremoux, as the cotenant who paid the mortgage and insurance after the parties separated in 2013, was entitled to reimbursement of one-half of those expenses. Because Colmet-Daage and Cremoux were entitled to identical credits for rental value and mortgage and insurance payments, respectively, the court concluded that neither party was entitled to compensation or credit.

Cremoux does not challenge the trial court's finding of an ouster or its methodology of crediting one-half of the fair rental value against Cremoux's claim for a credit of one-half of her expenditures for mortgage and insurance. Rather, Cremoux contends that the court erred in finding that Colmet-Daage was entitled to a rental credit for the time beginning in September 2013 and ending in August 2016. She argues that the ouster commenced on October 5, 2014, namely, 60 days after Colmet-Daage gave written demand for concurrent possession under Civil Code section 843. Cremoux asserts further that the trial court erred by awarding Colmet-Daage rental credit after January 2016; because the sewer/waste drainage line from the kitchen was not functional after the beginning of 2016, the property was uninhabitable and the fair rental value was therefore zero.

30

"It is a fundamental rule that each tenant in common has a right to occupy the whole of the property." (*Johns v. Scobie* (1939) 12 Cal.2d 618, 623.)  No tenant in common "is entitled to a possession or usage which *excludes* for any period of time a like possession or usage by his [or her] co-owners [citations]."  (*Krum v. Malloy* (1943) 22 Cal.2d 132, 135, original italics.)  Ouster occurs where there is the wrongful dispossession or exclusion of one tenant in common from the common property to which both cotenants are entitled to possession.  (*Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 548.)  "The ouster must be proved by acts of an adverse character, such as claiming the whole for himself [or herself], denying the title of his [or her] companion, or refusing to permit him [or her] to enter."  (*Ibid.*)  If there is an ouster, the dispossessed co-owner "is entitled to recover damages resulting from the ouster, which ordinarily amounts to his [or her] share of the value of the use and occupation of the land from the time of the ouster. [Citations.]"  (*Ibid.*)

The practical borderline for ouster may sometimes not be clear.  (*Estate of Hughes*, *supra*, 5 Cal.App.4th at p. 1612.)  The difficulty of proving an ouster led to the enactment of Civil Code section 843.  (*Estate of Hughes, supra*, at pp. 1612-1613.)  Civil Code section 843 provides an alternative means of determining ouster based upon a formal notice procedure.  The statute, however, does not provide the exclusive means of proving an ouster.  (Civ. Code, § 843, subd. (a):  "This section supplements and does not limit any other means by which an ouster may be established.")

Here, there was evidence supporting a finding of ouster that occurred long before the October 5, 2014, the date Cremoux urges here.  Cremoux testified she stopped admitting Colmet-Daage to the property in March or April 2013.  She installed a security system in June-July 2013 to exclude Colmet-Daage.  In or about August 2013, Cremoux served Colmet-Daage with restraining order papers in which she sought an order restraining Colmet-Daage from going near the property.  On her restraining order request, she listed the property as her residence address.  The request for restraining order was

31

denied by the court at a hearing on October 4, 2013. Cremoux testified that she used the property as the address for her business from 2013 to July 2016. She also testified that she and her children used the pool at the property as late as the summer of 2016.

The trial court found that an ouster had occurred in September 2013 because at or about that time, she had sought a restraining order preventing him from entering the property. In so concluding, the court rejected Cremoux's argument that she had not possessed the property after March 2013. Although Cremoux testified that she did not live at the property from April 2013 forward, the court did not find her testimony credible, noting that she had listed the property as her residence in the September 2013 request for a restraining order, had used the property for her business on an ongoing basis, had personal effects at the property, and had regularly used the pool with her children. There was substantial evidence to support the trial court's finding that an ouster occurred in September 2013. And the fact that Colmet-Daage served a statutory demand for concurrent possession of the property approximately one year later did not preclude the trial court from concluding that the ouster occurred in September 2013. (See Civ. Code, § 843, subd. (a) [providing that statute "supplements and does not limit any other means by which an ouster may be established"].)

Cremoux also challenges the court's determination that the ouster continued up to August 2016, claiming that the property was uninhabitable as of January 2016. This argument is based upon her testimony that there a broken sewer/waste drainage line from the kitchen. Cremoux argues from this testimony that "[w]ith the [p]roperty in this state it was uninhabitable and the fair market rent would be zero." There is no citation to the record in support of this specific statement. (See *City of Lincoln*, *supra*, 102 Cal.App.4th at p. 1239 [appellate contentions made without supporting citation to the record may be disregarded].)

The trial court at the second phase of trial found that the period of the ouster continued to the date of trial. The court reaffirmed that conclusion in its denial of

32

Cremoux's posttrial motion, concluding that based upon Cremoux's conduct of after August 2016, the ouster continued up to the time of sale. While the court in its Statement of Decision did not specifically address Cremoux's claim that the property was uninhabitable as of January 2016 (and, therefore, Colmet-Daage was not entitled to a credit for rent after that time), we will conclude that the court impliedly found that the property continued to have a fair rental value of $2,200 per month between January and August of 2016. "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. [Citations.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) Where "a party fails to bring omissions or ambiguities in the statement of decision's factual findings to the trial court's attention, then 'that party waives the right to claim on appeal that the statement was deficient in these regards,' and the appellate court will infer the trial court made implied factual findings to support the judgment. [Citation.]" (*Id.* at p. 59.) Cremoux failed to bring to the trial court's attention any deficiency in the Statement of Decision concerning the absence of an express finding concerning her claim that the property was uninhabitable as of January 2016. The doctrine of implied findings therefore disposes of her appellate challenge.

The trial court did not abuse its discretion in concluding that there was an ouster from the property justifying Colmet-Daage's receipt of a credit for one-half of the fair rental value of the property from September 2013 through August 2016.

## G. Conclusion

We have addressed Cremoux's four claims of error. First, Cremoux argued that she should have received an equitable allocation of an ownership interest in the property

of greater than 50 percent—claiming an entitlement to at least a 96 percent interest—based upon her assertion that she alone made the initial contribution to acquire the property in 2002, and she thereafter had made contributions to the property that were significantly greater than those made by Colmet-Daage. The trial court did not abuse its discretion in refusing to order this equitable allocation. It concluded that the parties' presumed equal ownership of the property, as evidenced by the joint tenancy grant deed, was not rebutted by evidence presented by Cremoux.

Second, Cremoux contended in the alternative that she should have been reimbursed for her initial investment and her pre-2010 expenditures related to the property by receiving a credit of $235,000 (the appreciation in value between 2002 and 2010). The trial court had significant grounds for declining to exercise its equitable powers to provide such a credit to Cremoux, including the absence of discussion regarding the parties' respective ownership interests, Cremoux's failure to advise Colmet-Daage that she expected reimbursement for her initial acquisition of the property, the fact that the debt exceeded the market value of the property as of April 2010, and the fact that Colmet-Daage paid the property taxes and other expenses for the property both before and after April 2010.

Third, Cremoux asserted the right to receive significant credits for her contributions to maintain and improve the property between 2013 and its sale in April 2017. Her claim for a credit based upon pretrial expenditures totaling $173,439 from 2013 to August 2016 was denied by the trial court because of her failure to meet her burden of proving that the work related to the expenditures enhanced the value of the property. Cremoux's claim for a credit of $200,000—based upon the alleged appreciation in value of the property resulting from her posttrial expenditures made to maintain and improve the property—was likewise properly rejected due to a failure of proof; the trial court found that the work related to those expenditures had not increased the value of the property.

34

Fourth, Cremoux contended that the court erred by providing Colmet-Daage with excessive credit for one-half of the fair rental value of the property during ouster. The trial court did not abuse its discretion in determining that the beginning point of the ouster was September 2013 (at or about the time Cremoux served Colmet-Daage with a request for a restraining order identifying the property as her residence), rather than in October 2014 as claimed by Cremoux. And the court did not err in concluding that the ouster continued to the date of trial in August 2016, rather than January 2016 when Cremoux claimed the property became uninhabitable. Both findings were supported by the record, and we defer to the trial court's weighing of the evidence and assessment of the parties' credibility.

In its consideration of the requests for credits and reimbursements by the parties associated with this partition action, the trial court's determinations properly fell within "the wide range of discretion accorded a court in equity." (*Finney*, *supra*, 111 Cal.App.4th at p. 542.) There was no error.

## III. DISPOSITION

The judgment of April 25, 2017, is affirmed. Respondent shall recover his costs on appeal.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
GROVER, J.

*Colmet-Daage v. Cremoux*
**H045033**